STATE OF CONNECTICUT *v.* GENDER
RAMOS GREGORIO
(AC 32441)

Lavine, Robinson and Pellegrino, Js.

Argued April 18—officially released July 24, 2012

*Susan M. Hankins*, for the appellant (defendant).

*Bruce R. Lockwood*, senior assistant state's attorney, with whom, on the brief, were *Stephen J. Sedensky III*, state's attorney, and *David Holzbach*, senior assistant state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. "The imposition of an appropriate sentence is the function of the court regardless of the

bargain of the parties. Plea agreements stem from the desire of the state to obtain a prompt disposition of criminal charges with the certainty of conviction, and from the agreement of the defendant to exchange his constitutional right to a trial, with all of its constitutional safeguards, for the certainty of a known and reduced penalty. The defendant is engaged in barter for the length of his incarceration. . . . The term of imprisonment is a defendant's 'bottom line' and his paramount interest. The length of time a defendant must spend incarcerated is clearly crucial to a decision involving whether he should plead guilty. . . . When the defendant's reasonable expectation that his sentence will not exceed a particular term is to be defeated because of the trial court's decision, in the proper exercise of its discretion, that a sentence in excess of an agreed term is appropriate, the defendant must be given the opportunity by the trial court to withdraw his plea." (Citations omitted.) *State* v. *Schaeffer*, 5 Conn. App. 378, 390–91, 498 A.2d 134 (1985). When a defendant is permitted to withdraw his plea under such circumstances, he is "returned to precisely the same position he had occupied before entering the plea." *State* v. *Thomas*, 296 Conn. 375, 396, 995 A.2d 65 (2010).

In this interlocutory appeal, the defendant, Gender Ramos Gregorio, appeals from the trial court's denial of his motion to dismiss the charges pending against him after the court declined to sentence him pursuant to a plea agreement under which he would serve no time in prison (no jail plea). On appeal, the defendant claims that the court violated (1) his constitutional rights to due process and the protection against double jeopardy and (2) Practice Book § 39-9 when it failed to sentence him in accordance with the no jail plea agreement and denied his motion to dismiss the charges against him. The defendant's claims are controlled by

our Supreme Court's decision in *State* v. *Thomas*, supra, 296 Conn. 375.[1] We affirm the judgment of the trial court.

The record discloses the following relevant facts and procedural history. At the defendant's plea hearing, the prosecutor made the following representation of facts to the court, *Matasavage, J.* At approximately 3:42 a.m. on July 13, 2008, Danbury police officers were dispatched to the intersection of Balmforth Avenue and North Street in response to a report of a hit and run motor vehicle accident. When they arrived at the scene, the officers found a motorcyclist, Christopher Grasso, suffering from serious injuries. Another motorcyclist, Robert Prescott, informed the officers that he and Grasso were traveling in the left lane of Balmforth Avenue when a Volkswagen traveling in the right lane passed them at a high rate of speed. The Volkswagen continued until it reached the intersection of North Street. When the Volkswagen reached the intersection and began to turn right, Grasso's motorcycle came in contact with the left side of the Volkswagen. Grasso was thrown seventy feet from the point of contact, and the operator of the Volkswagen left the scene without stopping.

Lawrence Anderson witnessed the incident. He informed the officers that he saw the Volkswagen fishtail into one of the motorcycles for no apparent reason.

The police officers broadcast information about the Volkswagen to other police departments, and Grasso's

[1] In his brief, the defendant claims that because he entered his plea before the decision in *State* v. *Thomas*, supra, 296 Conn. 375, was rendered, he "cannot be presumed to be aware of the holding that as a matter of law his plea could not be unconditionally accepted . . . ." We reject that argument. In deciding *Thomas*, our Supreme Court relied on our statutes, rules of practice, as well as cases from this court holding that when a case is continued for a presentence investigation, the defendant's plea is conditional. The defendant, who was represented by counsel, was on notice of our rules of practice and statutes regarding plea agreements and presentence investigations.

friends used the Internet to disseminate a description of the vehicle. One of Grasso's friends saw a vehicle matching the description of the Volkswagen with damage to the rear quarter panel in Bethel. Approximately eight hours after the collision, Bethel police officers confronted the owner of the Volkswagen. The owner provided no information to the officers until he was informed that he was going to be arrested. The owner then informed the police that the defendant had been operating his Volkswagen the night before. The defendant came forward, and the police took him into custody.[2]

The defendant was charged with assault in the first degree in violation of General Statutes § 53a-59, evading responsibility in an accident causing serious physical injury in violation of General Statutes § 14-224 (a), reckless driving in violation of General Statutes § 14-222 and operating a motor vehicle without an operator's license in violation of General Statutes § 14-36 (a). The defendant entered pro forma not guilty pleas to all charges.

The case was continued many times and pretried on more than one occasion before the court, *Reynolds, J.* As a result of the plea negotiations, the state offered to let the defendant plead guilty to evading responsibility in an accident involving serious injuries in return for a sentence of ten years in prison, suspended after two years served, and five years of probation. Judge Reynolds indicated that she would not require "jail time" and would impose a suspended sentence.[3] The matter was continued for a plea hearing. Judge Reynolds, however, was unavailable to take the defendant's

---

[2] The prosecutor represented to Judge Matasavage that Grasso had sustained significant injuries, including multiple broken bones, loss of skin and damage to his spleen and brain.

[3] We have no transcript of a proceeding in which Judge Reynolds made the no jail plea offer.

plea of nolo contendere, so the defendant appeared before Judge Matasavage on July 17, 2009. After canvassing the defendant and finding that his plea of nolo contendere was made knowingly and understandably with the assistance of competent counsel, Judge Matasavage ordered a presentence investigation and continued the matter for sentencing before Judge Reynolds.

The defendant appeared before Judge Reynolds for sentencing on October 2, 2009. At that time, the court had reviewed the presentence investigation report and found aggravating circumstances that she had not known of, or fully appreciated, previously.[4] Judge Reynolds stated in part: "[T]he [presentence investigation report] has revealed to me facts that either *I misunderstood or that I did not have* at the time that I made the offer." (Emphasis added.) Due to the new information in the report, the court withdrew the no jail plea offer. The court extended a new plea offer of ten years in prison, execution suspended after six months, and five years of probation (six month plea). The court continued the case, affording the defendant an opportunity to consider whether to accept the six month plea offer or to withdraw his plea of nolo contendere.

On March 10, 2010, defense counsel informed Judge Reynolds that the defendant would neither accept the court's six month plea offer nor would he withdraw his plea of nolo contendere. Thereafter, the court withdrew its six month plea offer, vacated the defendant's plea of nolo contendere, reinstated his not guilty pleas and placed the matter back on the jury trial docket. The defendant then filed a motion to dismiss the charges

---

[4] On November 4, 2009, the defendant filed a motion to correct the presentence investigation report. In his motion, the defendant contended that the presentence investigation report incorrectly stated that he had conversed with law enforcement, given a statement and made admissions. The defendant contended that the statements and admissions attributed to him were erroneous. Judge Reynolds denied the motion on May 21, 2010.

against him, claiming that the court had violated his constitutional rights to due process and protection against double jeopardy. The court denied the motion to dismiss in an oral decision on May 21, 2010, citing *State* v. *Thomas*, supra, 296 Conn. 375, as the controlling authority. The defendant appealed.[5] Additional facts will be set forth as necessary.

I

As a preliminary matter, because the defendant is appealing from the denial of a motion to dismiss, which ordinarily is not reviewable; see, e.g., *State* v. *Jutras*, 121 Conn. App. 756, 756–57, 996 A.2d 1212, cert. denied, 298 Conn. 917, 4 A.3d 1230 (2010); we must determine whether the appeal is properly before us. See *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983) (judgment in criminal matter ordinarily is imposition of sentence). "It is axiomatic that appellate jurisdiction is limited to final judgments of the trial court. . . . [T]here is a small class of cases [however] that meets the test of being effectively unreviewable on appeal from a final judgment and therefore, is subject to interlocutory review. The paradigmatic case in this group involves the right against double jeopardy. . . . *Because jeopardy attaches at the commencement of trial, to be vindicated at all, a colorable double jeopardy claim must be addressed by way of interlocutory review. The right not to be tried necessarily falls into the category of rights that can be enjoyed only if vindicated prior to*

[5] On November 9, 2010, the defendant filed a motion for specific performance of the plea agreement. The court implicitly denied the motion for specific performance by withdrawing the plea offer and vacating the defendant's plea of nolo contendere. The defendant included the denial of his request for specific performance in the statement of the issues on appeal. The parties were ordered to appear at this court's own motion calendar to give reasons why, if any, that claim should not be dismissed for lack of a final judgment. Thereafter, pursuant to *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983), this court dismissed the defendant's claim regarding specific performance for lack of a final judgment.

*trial, and, consequently, [is reviewable in an interlocutory appeal]* . . . ." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Crawford,* 257 Conn. 769, 774–75, 778 A.2d 947 (2001), cert. denied, 534 U.S. 1138, 122 S. Ct. 1086, 151 L. Ed. 2d 985 (2002).

In this case, the defendant claims that the court violated the constitutional prohibition against double jeopardy by vacating his guilty plea, scheduling the matter for trial and denying his motion to dismiss. This appeal therefore falls squarely within the small class of claims reviewable in an interlocutory appeal; see *State* v. *Thomas,* supra, 296 Conn. 382; and is properly before us.

II

We next set forth the applicable standard of review. "A criminal defendant may raise the defense that a [p]revious prosecution bar[s] the present prosecution in a motion to dismiss. Practice Book § 41-8 (6)." (Internal quotation marks omitted.) *State* v. *Thomas,* supra, 296 Conn. 383. A motion to dismiss effectively challenges the jurisdiction of the court. Id. "The standard of review to determine whether the defendant's constitutional right against double jeopardy was violated is de novo because it is a question of law. . . . The factual findings of the court that determine that issue, however, will stand unless they are clearly erroneous." (Citation omitted.) *State* v. *Ellison,* 79 Conn. App. 591, 598, 830 A.2d 812, cert. denied, 267 Conn. 901, 838 A.2d 211 (2003).[6]

III

The defendant states the issue on appeal as "[w]hether the trial court's failure to sentence [him] in

[6] The defendant has argued that the standard of review regarding interpretations of plea agreements is de novo in accordance with the principles of contract law pursuant to decisions of the federal courts. Our Supreme Court has decided otherwise. See *State* v. *Thomas,* supra, 296 Conn. 384–86.

accord with the *noncontingent* plea agreement, and the trial court's vacating the defendant's *unconditionally* accepted plea, violated [his] rights to due process and protection against double jeopardy, and the provisions of the Connecticut Practice Book, where there was no new, important and previously unavailable information, and where [he] had a reasonable expectation of finality." (Emphasis added.) In *State* v. *Thomas*, supra, 296 Conn. 377, our Supreme Court considered "whether the double jeopardy clause of the fifth amendment to the United States constitution bars a trial court from vacating a previously accepted guilty plea if the court later determines, on the basis of new information uncovered during the presentence investigation, that the sentence contemplated by the plea agreement is inappropriate."[7] In stating the issue here, the defendant attempts to distinguish his case from *Thomas* by claiming that his plea of nolo contendere was *noncontingent* and that the court accepted his plea *unconditionally*. We disagree.

Although the plea hearing facts in *State* v. *Thomas*, supra, 296 Conn. 377–81, are somewhat different from those of the plea hearing in this case, the same legal principles apply. We conclude that the factual differences between the two plea hearings do not lead to a different conclusion with regard to the defendant's constitutional rights. Neither plea agreement was noncontingent, and neither plea was unconditionally accepted. Here, as in *Thomas*, sentencing was subject to a presentence investigation; see General Statutes § 54-91a (a); Practice Book § 43-10; and to Grasso's right under the constitution of Connecticut to meaningfully participate in sentencing. See Conn. Const., amend.

[7] The defendant claims the court violated his rights under the United States constitution and the constitution of Connecticut, but he acknowledges that our state constitution provides no greater rights with regard to double jeopardy than the federal constitution. See *State* v. *Michael J.*, 274 Conn. 321, 350, 875 A.2d 510 (2005).

XXIX. A trial court is not duty bound to impose a sentence dictated by a plea agreement if a presentence investigation discloses new information. *State* v. *Thomas*, supra, 388, 393–94. When the court declined to impose the no jail plea agreement on the basis of the presentence investigation, it properly offered to let the defendant withdraw his plea. See id., 389.

In deciding *Thomas*, our Supreme Court noted that "[t]he United States Supreme Court has yet to decide when jeopardy attaches in a case disposed of by a guilty plea, although it has assumed that jeopardy attaches at least by the time of *sentencing* on the plea. . . . In the absence of definitive guidance from the United States Supreme Court, federal and state courts have split on the question. . . .

"Courts have focused on the following four considerations when deciding the point at which jeopardy attaches to a guilty plea: (1) whether the court has accepted the defendant's guilty plea; (2) whether the court has rendered judgment and sentenced the defendant; (3) whether the court's acceptance of the plea was conditional; and (4) whether the circumstances surrounding the court's acceptance of the plea implicate the policy concerns underlying the double jeopardy protection. The first two considerations focus on specific points in the judicial process." (Citations omitted.) Id., 384–86. "The last two considerations focus on the nature of the court's acceptance of a guilty plea." Id., 386. "The competing methods for determining when jeopardy attaches to a guilty plea are distinguished primarily by the degree to which the reviewing courts equate a guilty plea to a conviction." Id., 387.

The relevant facts of *Thomas* follow. Dereck Thomas was a forty-seven year old man who engaged in sexual intercourse with a teenage girl and was charged with four counts of sexual assault in the second degree and

four counts of risk of injury to a child. Id., 377–78. Following plea negotiations, the state recommended a sentence of ten years imprisonment, suspended after five years served. The court, *Rubinow, J.*, indicated that it would impose a sentence of five years imprisonment, suspended after one year served, and ten years of probation. Id., 378. Subsequently, Thomas pleaded guilty to one count of sexual assault in the second degree and one count of risk of injury to a child; the state agreed to nolle the remaining six charges at the time Thomas was sentenced. Id.

During the plea canvass, Judge Rubinow stated: " '[T]he sentence [I would] *likely impose* [would] be five years in jail suspended after you serve one full year in jail, but that *the victim's position may affect the court* so that you do the minimum mandatory nine months instead of the potential maximum sentence.' . . . The court further emphasized that 'any credit against that one year would be based upon whether or not the victim was willing to make an appropriate statement to the court, as there have been great inconsistencies between the state's understanding of the victim's position and the position that was identified by the public defender.' " (Emphasis in original.) Id., 378–79. Judge Rubinow ordered a presentence investigation at the defendant's request. Id., 379.

Thomas' presentence investigation revealed new and important information that was not available to the court at the time Thomas pleaded. Specifically, Thomas had provided the victim with alcohol prior to engaging in sexual relations with her, the victim had attempted suicide and engaged in self-mutilation in the months following the sexual assaults, and the victim thought Thomas should go to jail for a long time. Id. On the basis of the new information, the state's view of Thomas' culpability was not commensurate with a sentence including one year to serve. Id. The court offered to

permit Thomas to withdraw his plea and continued the matter to permit the victim to testify. Id., 380. The victim's testimony was consistent with the presentence investigation. She also testified that she had been hospitalized for one year and that "the letters she wrote to [Thomas], which the trial court had considered during the plea negotiations, did not represent the full extent of her 'mixed emotions about the whole situation.' " Id. The victim also stated that she believed Thomas should be imprisoned for ten years. Id. "In light of the new information presented through the presentence investigation report and the victim's testimony, [Judge Rubinow] ultimately declined to impose the sentence contemplated in the plea agreement, vacated [Thomas'] guilty plea, noted pro forma pleas of not guilty on his behalf, and placed the matter on the trial list." Id. Our Supreme Court concluded that "[b]ecause this case does not meaningfully implicate any policy considerations underlying the double jeopardy clause, we hold that jeopardy did not attach to the trial court's conditional acceptance of [Thomas'] plea." Id., 397.

In the case before us, the defendant appeared before Judge Matasavage for a plea hearing on July 17, 2009. The prosecutor made the following representation to the court: "Judge Reynolds has indicated that she will impose a sentence of ten years, execution completely suspended and five years of probation. That information has been conveyed to [Grasso] and his family. They will address Judge Reynolds . . . at the sentencing time when the [presentence investigation] has been presented." After Judge Matasavage accepted the defendant's plea, he ordered a presentence investigation.[8]

[8] The transcript also reveals that the defendant's sentencing was scheduled at a time convenient to Grasso and that Judge Matasavage further extended the date of sentencing to ensure that the presentence investigation report would be available for Judge Reynolds' review.

The defendant appeared for sentencing before Judge Reynolds on October 2, 2009. The court, however, continued the matter, stating to the defendant: "I want you to understand . . . this is not the fault of your attorney at all. I informed him today when he came that after a thorough review of this presentence investigation, I'm not inclined to stand by the offer that I had made to [you], in good faith, and that your [counsel] conveyed to you. And, I apologize, also, to the state's attorney. I have made a new offer to your attorney that you'll have to consider, take his advice on whether you want to accept that offer or not, but the [presentence investigation] has revealed to me facts that either *I misunderstood or that I did not have at the time that I made the offer* to your attorney. . . . I made the offer to your attorney based on what I understood at the time; no fault to either counsel for withholding things . . . from me. [Your attorney] conveyed that offer to you, and you were willing to accept it. But, I can't go forward with it after what I've read in the [presentence investigation report]. So, I am giving your attorney time to investigate those things that concern me as a result of the [presentence investigation] . . . ." (Emphasis added.)

On March 10, 2010, the defendant again appeared before Judge Reynolds for sentencing. The court summarized the pretrial negotiations[9] and the state's sentencing request and stated that although Judge Matasavage may have accepted the defendant's plea, he had not been involved at all in the negotiations. Judge Reynolds also stated: "[A presentence investigation] was ordered, as is always ordered to aid the court in sentencing, to give the court information that it's not aware of. And I read the [presentence investigation report], and as a result of the [presentence investigation], there were matters that greatly concerned me.

---

[9] The case was continued twenty-four times and pretried several times.

My impression of the accident, itself, was that everybody was stopped at a stop sign. When [the defendant] started up his car, he fishtailed and that's what hit one of the motorcycles that was following him, [Grasso's] motorcycle. Apparently, that's not true. According to a witness, [the defendant] was swerving left and right, and even he says that he swerved in trying to keep the motorcycles from passing him. Also, I was told, the reason he was driving, even though he had no license, was that he found himself at a party and his cousin, who owned the car, had too much to drink and couldn't drive home. So that's the only reason that he drove the car home. According to the [presentence investigation report], [the defendant] even though he has no license, drives quite often. Drives to work. Drives home whenever he feels he has to. But he's been driving, although he's never had a valid Connecticut driver's license. He drives once or twice a month for other reasons, in the [presentence investigation report].

"When counsel came in for sentencing, I indicated that I had to take back my offer of a totally suspended sentence and probation. That I now felt that [the defendant] had to spend at least six months in jail. . . . I felt I needed some jail time as a result of the [presentence investigation], which is the whole intention of a [presentence investigation] in the first place. It's a presentence report to give the court further information about the defendant." In addition, the prosecutor represented to the court that Grasso was not happy with the plea agreement offered the defendant. The court afforded the defendant the opportunity to accept a plea offer of ten years imprisonment, suspended after six months served, and five years of probation. When the defendant rejected the court's six month plea offer, the court withdrew all plea offers, vacated the defendant's plea of nolo contendere and placed the case back on the jury trial docket.

The defendant argues that this case is unlike *Thomas* in that Judge Rubinow told Thomas the sentence it " 'likely' " would impose and that the " 'victim's position may affect the court.' " *State* v. *Thomas*, supra, 296 Conn. 378. The defendant is correct that Judge Matasavage did not inform him that the court's sentence could be influenced by the results of the presentence investigation. The defendant therefore contends that his plea agreement was noncontingent and the court accepted his plea unconditionally. The decision in *State* v. *Thomas*, supra, 375, reminds us, however, that the trial court lacks the authority to accept unconditionally a guilty plea; id., 388; pursuant to Practice Book § 43-10. Moreover, the trial court may withdraw a plea offer on the basis of new information "uncovered by a presentence investigation report, impose a harsher sentence and give the defendant the option of withdrawing his plea." Id., 394. That is exactly what happened in this case.

The defendant grounds his claim of a noncontingent plea agreement and unconditionally accepted plea in Practice Book § 39-9, which is found in chapter 39 of the rules of practice, entitled "[criminal] disposition without trial." Section 39-9 provides, if after acceptance of a plea agreement, "the case is continued for sentencing, the judicial authority shall inform the defendant that a different sentence from that embodied in the plea agreement may be imposed on the receipt of new information or on sentencing by another judicial authority, but that if such a sentence is imposed, the defendant will be allowed to withdraw his . . . plea in accordance with Sections 39-26 through 39-28." Although we agree that Judge Matasavage should have informed the defendant that a different sentence could be imposed following the court's receipt of the presentence investigation report, his failure to so inform the defendant did not bar Judge Reynolds from deciding that the no jail

plea agreement was inappropriate given the new information she perceived to be in the presentence investigation report. Judge Reynolds appropriately gave the defendant the option of accepting a new plea agreement or withdrawing his plea of nolo contendere. Ultimately, the court vacated the defendant's nolo contendere plea and returned the matter to the jury trial docket, which is the remedy prescribed by Practice Book § 43-10.[10]

This is not the first time this court has considered a case in which the trial court accepted a guilty plea but neglected to inform the accused that he could withdraw his guilty plea if he was not sentenced in accord with a recommended sentence. See *State* v. *Schaeffer*, supra, 5 Conn. App. 380. In *Schaeffer*, this court stated: "[D]uring the course of the plea taking, [Michael V. Schaeffer] was not told by the court in accordance with Practice Book § 697 [now § 39-9] that since his case was being continued for sentencing, he might be sentenced by another judicial authority who might impose a different sentence from that which was the subject of the plea agreement, and, if so, that he would be allowed to withdraw his plea in accordance with [the rules of practice]. The failure to do so was a violation of the rules of practice and [Schaeffer's] constitutional rights. When a case is continued for the preparation of a presentence

_____

[10] Practice Book § 43-10 provides in relevant part: "Before imposing a sentence or making any other disposition after the acceptance of a plea of . . . nolo contendere . . . the judicial authority shall, upon the date previously determined for sentencing, conduct a sentence hearing as follows:

"(1) The judicial authority shall afford the parties an opportunity to be heard and, in its discretion, to present evidence on any matter relevant to the disposition, and to explain or controvert the presentence investigation report . . . or any other document relied upon by the judicial authority in imposing sentence. . . .

"(2) The judicial authority shall allow the victim and any other person directly harmed by the commission of the crime a reasonable opportunity to make, orally or in writing, a statement with regard to the sentence to be imposed. . . ."

investigation report and the court is aware of the sentence recommendation but does not indicate its unwillingness to follow it, the court is implicitly indicating that, although it is not bound by the recommendation, it will probably be accepted. *At the time of the acceptance of a guilty plea where a presentence investigation report is necessary, there can be no unconditional promise of the court that a particular sentence will be imposed because that would violate the statutory mandate for such a report*[11] *and public policy. Any bargain of the parties must be contingent upon its acceptance by the court after its review of the presentence investigation report.* There is a difference between the entitlement of a defendant to a particular sentence and the expectation of the defendant that the trial court will follow the recommendation for a particular sentence." (Emphasis added.) Id., 387.

Our Supreme Court has stated that "as a matter of Connecticut law, the trial court's acceptance of the defendant's guilty plea was *conditioned* upon the results of the presentence investigation." (Emphasis in original.) *State* v. *Thomas*, supra, 296 Conn. 388. "Modern precepts of penology require that discretion of a sentencing judge to impose a just and appropriate sentence remain unfettered throughout the sentencing proceedings. Where a presentence investigation report is statutorily mandated, a judge cannot make any promise or determination of the sentence he will impose before he has reviewed the report. . . . Moreover, [*u*]*ntil sentence is pronounced, the trial court maintains power*

---

[11] See General Statutes § 54-91a (a), which provides in relevant part: "No defendant convicted of a crime . . . the punishment for which may include imprisonment for more than one year, may be sentenced, or the defendant's case otherwise disposed of, until a written report of investigation by a probation officer has been presented to and considered by the court, if the defendant is so convicted for the first time in this state; but any court may, in its discretion, order a presentence investigation for a defendant convicted of any crime or offense . . . ."

*to impose any sentence authorized by law; and, though the sentencing judge may be conscience-bound to perform his own prior agreements with counsel and the parties, the court is not in law bound to impose a sentence that once seemed, but no longer seems, just and appropriate.* . . . In those circumstances in which the judge cannot in conscience impose the sentence conditionally promised, it has been uniformly recognized that the only obligation he has is to grant the defendant the opportunity to withdraw his guilty plea. . . . *State* v. *DeJesus*, 10 Conn. App. 591, 603–604, 524 A.2d 1156 (1987). Therefore, once the trial court ordered the presentence investigation, the trial court's acceptance of the defendant's plea agreement necessarily became contingent upon the results of the presentence investigation report. Otherwise, the presentence investigation report would be little more than a nullity, and our law makes clear that these reports are to play a significant role in reaching a fair sentence. Simply put, any plea agreement must be contingent upon its acceptance by the court after [the court's] review of the presentence investigation report. *State* v. *Schaeffer*, [supra, 5 Conn. App. 387]." (Emphasis in original; internal quotation marks omitted.) *State* v. *Thomas*, supra, 296 Conn. 388–89.

Moreover, pursuant to our state constitution, in addition to a presentence investigation, "the court must provide an opportunity for the victim to meaningfully participate in the defendant's sentencing." Id., 389. As in the case of a presentence investigation, "when the victim chooses to make a statement, acceptance of a guilty plea must be contingent upon hearing from the victim in order to provide the victim with a meaningful right to participate in the plea bargaining process." Id., 390–91.

Here, as in *Thomas*, the pretrial investigation revealed information that the court perceived to be new

and important. Even though the defendant claims that the mechanics of the collision were discussed during several pretrials, Judge Reynolds stated that the presentence investigation report revealed facts that she either misunderstood or did not have with regard to how the Volkswagen and the motorcycle came in contact. As noted, the investigation revealed that the defendant had operated motor vehicles without a license not just on the night in question but routinely. Also, the presentence investigation report indicated that Grasso was not happy with the no jail plea agreement and sought to address the court at the time of sentencing.

After comparing the facts of this case with those in *Thomas* and reviewing our Supreme Court's decision in *Thomas*, our state constitution, statutes and the rules of practice, we cannot conclude that the defendant's plea of nolo contendere was noncontingent and that Judge Matasavage accepted it unconditionally.

### A

The defendant claims that the nature of the no jail plea agreement gave him an expectation of finality. We disagree that any subjective expectations that the defendant may have had prevented the court from acting as it did in this case.

Our Supreme Court has stated that "the acceptance of a guilty plea is legally different from a conviction based on a jury's verdict, and, therefore, that jeopardy does not necessarily attach automatically upon the acceptance of a guilty plea as it does to an actual judgment of conviction. . . . This is particularly so when . . . the trial court's acceptance of the guilty plea is conditional. . . .

"In our view, the acceptance of a defendant's guilty plea should not trigger double jeopardy protection unless the facts and circumstances surrounding the

guilty plea implicate the policy considerations underlying the double jeopardy clause." (Citations omitted; internal quotation marks omitted.) Id., 392. An appellate court "must consider the defendant's double jeopardy claim in light of the twin aims of the double jeopardy clause—protecting a defendant's finality interest and preventing prosecutorial overreaching."[12] Id., 392–93.

The key factors used to determine whether the acceptance of "a defendant's plea gave him an expectation of finality sufficient to trigger double jeopardy protection"; id., 393; "include the nature of the plea agreement and the degree to which the trial court's acceptance was equivocal or contingent on the introduction of new information." Id. The defendant claims that, because Judge Matasavage failed to comply with Practice Book § 39-9, his nolo contendere plea was accepted unconditionally. He also claims that the information in the presentence investigation report was not new or sufficiently important to satisfy the standards enunciated in *Thomas* and required by our rules of practice and due process. We do not agree.

In this case, Judge Matasavage accepted the defendant's plea of nolo contendere and continued the matter for a presentence investigation and sentencing. Under those same procedural circumstances in *Thomas*, our Supreme Court concluded that the circumstances "clearly indicated that the case had not concluded." Id. In accordance with the analysis in *Thomas*; id.; Judge Matasavage lacked authority to accept unconditionally the defendant's plea under our rules of practice; see Practice Book § 43-10; and statutes. See General Statutes § 54-91a. The defendant knew a presentence investigation had been ordered and that Grasso, who was

---

[12] At oral argument on the defendant's motion to dismiss, defense counsel acknowledged that there was no prosecutorial overreaching in this case. We therefore do not consider it.

seriously injured, wanted to exercise his constitutional right to have input as to sentencing. Moreover, the rules of practice permit a court to abandon a previously accepted plea agreement due to the presentation of new information uncovered by the presentence investigation, to impose a harsher sentence and to give the defendant the option of withdrawing his plea.[13] *State* v. *Thomas,* supra, 296 Conn. 393–94. Under those circumstances, the defendant, who Judge Matasavage found was represented by competent counsel, could not have reasonably believed that his plea was noncontingent and that it had been accepted unconditionally as a matter of law. See id., 394–95.

The defendant also contends that the presentence investigation contained no new and important information. When she withdrew her no jail plea offer, Judge Reynolds stated that a presentence investigation "was ordered, as is always ordered to aid the court in sentencing, to give the court information that it's not aware of. And I read the [presentence investigation report], and as a result of the [presentence investigation], there were matters that greatly concerned me." The court stated on October 2, 2009, at the time it withdrew the no jail plea offer, that the presentence investigation "revealed to me facts that either I misunderstood or that I did not have at the time I made the offer." The court later articulated the basis of its position when ruling on the defendant's motion to dismiss.[14]

---

[13] In addition, the transcript of the plea hearing, trial court docket sheet and the request for a presentence investigation indicate that the defendant had the right to argue for a lesser sentence at the time of sentencing.

[14] At the time the court ruled on the defendant's motion to dismiss, it stated: "I will, once again, reiterate for the record, this matter has been progressing through this court since July 18, 2008. It has had twenty-four continuances. In the course of those twenty-four continuances, I don't believe I ever read a police report that's in the state's file. I do not read the police report out of the state's file unless I have a reason to.

"If [the defendant] made the same statements that were in the [presentence investigation report]—if he made them in the police report—when I read the [presentence investigation report], it was the first time I was aware of

On appeal, the defendant argues that police reports, maps, accident reconstruction analysis and medical records were before the court.[15] The defendant's appellate argument is predicated on his perception not only of the information the court reviewed, but also his perception of what the court knew or should have known about the case after twenty-four continuances and several pretrials. Moreover, the court explained that it does not review the police reports and the state's file at the time of a pretrial and that the information in the presentence investigation report was new to it. It is not possible for us to know what the court knew or should have known at the time it made the no jail plea offer, particularly in light of the fact that the case was continued twenty-four times and that there were several pretrials. There is no way for this court to know how the court's perception of the situation changed after it reviewed the presentence investigation report, but there is no reason to doubt the court's representations. The key is not what documents were before the court, but the court's understanding of the information provided to it. The court stated: "I don't think I fully appreciated [the state's position] until I read the [presentence

them. It was also the first time I was aware of other facts that came out in the [presentence investigation] that I was not aware of during the pretrial conferences, for whatever reason.

"I also wasn't aware—I knew the witness'—the complainant's position. Perhaps I wasn't aware of the witness' position that the state, certainly, tried to convey to me—the strength of the witness' position—*but I don't think I fully appreciated it until I read the [presentence investigation report]. . . .*

"Based on *State* v. *Dereck Thomas* and other research that I have done on this, I am going to deny the motion to dismiss. We have restored [the defendant's] not guilty pleas. He is back in the same position he was in before his pleas were entered." (Emphasis added.)

[15] The documents that Judge Reynolds may or may not have reviewed during the several pretrials are not before us. The defendant filed a motion for articulation and rectification, which the trial court denied, and a motion for review, which this court granted but denied the relief requested. Those documents are not necessary for our review of the claims on appeal.

investigation report]." Given the important role plea bargaining plays in our criminal justice system, courts should not blithely disavow plea offers. But when a presentence investigation report brings significant new information to light, or provides new insights into an offender's criminal behavior or background, the sentencing judge must be given substantial latitude in determining how to proceed and whether to abrogate any existing understanding.

The state points out that Practice Book § 39-9 provides in relevant part that "the judicial authority shall inform the defendant that a different sentence from that embodied in the plea agreement may be imposed on the receipt of *new information* . . . ." (Emphasis added.) We apply the rules of statutory construction with equal force to the rules of practice. See *State* v. *Pare*, 253 Conn. 611, 622, 755 A.2d 180 (2000). "[A] useful guide to the meaning of statutory language is an identification of the principal audience of that language—that is, by answering the question: To whom is the statute primarily addressed?" *State* v. *Brown*, 242 Conn. 389, 406, 699 A.2d 943 (1997). Our plain reading of § 39-9 indicates that the rule is addressed to the judicial authority, or court. In *State* v. *Thomas*, supra, 296 Conn. 379, our Supreme Court identified new information as "information that had not been available to the court at the time of the plea negotiations." The key is not what the defendant thought was new, but what the court was not aware of or did not fully appreciate at the time of the plea negotiations.

At the time of the sentencing scheduled on March 10, 2010, the court stated: "My impression of the accident, itself, was that everybody was stopped at a stop sign. When [the defendant] started up his car, he fishtailed, and that's what hit . . . [Grasso's] motorcycle. Apparently, that's not true. According to a witness, [the defendant] was swerving left and right, and even he says that

he swerved in trying to keep the motorcycles from passing him.

"Also, I was told, the reason he was driving, even though he had no license, was that he found himself at a party and his cousin, who owned the car, had too much to drink and couldn't drive home. So that's the only reason that he drove the car home. According to the [presentence investigation report, the defendant] even though he has no license, drives quite often. Drives to work. Drives home whenever he feels he has to. But he's been driving, although he's never had a valid Connecticut driver's license. He drives once or twice a month for other reasons . . . ." The court also stated when it ruled on the defendant's motion to dismiss, that it was not aware of Grasso's position regarding the no jail plea. On the basis of the court's articulation of the information it gleaned from the presentence investigation report, we cannot conclude that the information was not new or not important to the court.

B

The defendant's final claim is that enforcement of the no jail plea agreement is required under the doctrine of manifest necessity. We conclude that the doctrine of manifest necessity does not apply in the present situation.

"[T]he concept of manifest necessity generally arises in the context of a mistrial declared after the commencement of trial and before the verdict . . . ." *State* v. *Thomas*, 106 Conn. App. 160, 185, 941 A.2d 394 (*Bishop, J.*, dissenting), cert. denied, 287 Conn. 910, 950 A.2d 1286 (2008). "The primary definition for when manifest necessity justifies declaring a mistrial was articulated by the United States Supreme Court in *United States* v. *Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L. Ed. 165 (1824): [I]n all cases of this nature, the law has invested Courts of justice with the authority to

discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." (Internal quotation marks omitted.) *State* v. *Kasprzyk*, 255 Conn. 186, 193, 763 A.2d 655 (2001); see *Aillon* v. *Manson*, 201 Conn. 675, 681 n.5, 519 A.2d 35 (1986) (deadlocked jury quintessential rationale for manifest necessity in declaring mistrial).

Here, the defendant argues that, in some jurisdictions, abrogation of a plea agreement is treated under the strictures of manifest necessity. See, e.g., *State* v. *Horrocks*, 17 P.3d 1145, 1151 (Utah App. 2001). Our Supreme Court has not yet so held. "The double jeopardy clause will bar a second prosecution only if jeopardy attach[ed] in an earlier proceeding. . . . [T]he conclusion that jeopardy attaches . . . expresses a judgment that the constitutional policies underpinning the [f]ifth [a]mendment's guarantee are implicated at that point in the proceedings. . . . In a jury trial, jeopardy attaches when a jury is empanelled and sworn. . . . In a trial before the court, jeopardy attaches when the court begins to hear evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Thomas*, supra, 296 Conn. 384. As previously addressed, our Supreme Court set out four factors to be taken into consideration when deciding the point at which jeopardy attaches to a guilty plea. Id., 386. "The competing methods for determining when jeopardy attaches to a guilty plea are distinguished primarily by the degree to which the reviewing courts equate a guilty plea to a conviction." Id., 397. As we determined in part III A of this opinion, the legal circumstances of this case are no different than they were in *Thomas*; the court was not permitted to accept the defendant's guilty plea unconditionally and jeopardy had not attached.

To support his position, the defendant relies on a decision of our Supreme Court involving a plea agreement that is factually distinct from the plea agreement in this case, namely, a plea agreement involving contract principles, not a presentence investigation report. In *State* v. *Rivers*, 283 Conn. 713, 931 A.2d 185 (2007), Jonathan Rivers appealed from the denial of his motion to dismiss certain charges against him after the court, *Damiani, J.*, concluded that Rivers had breached his plea agreement. Id., 715. Rivers had agreed to plead guilty to kidnapping in the first degree and assist the state in the prosecution of other individuals who had participated in the murder of the victim. Id., 718. In return for Rivers' assistance, the state agreed, among other things, to make certain sentencing recommendations to the court. Id. Rivers provided a tape-recorded statement and testified truthfully at the probable cause hearing of Miguel Estrella. Id.

Rivers was released on bond but was subsequently arrested again on unrelated charges. Id., 719. When Rivers was called to testify at Estrella's trial, he invoked his right against self-incrimination on the advice of counsel. Id. Rivers' probable cause testimony was introduced at Estrella's trial and Estrella was convicted. Id. Thereafter, the state declared Rivers' plea agreement null and void and filed a new information against him. Id. The state claimed that Rivers "had violated, and thereby had vitiated, the agreement when he refused to testify at Estrella's trial . . . ." Id. Rivers claimed that his invocation of his constitutional rights did not breach the plea agreement and that the state had gained the benefit of the plea agreement "by virtue of its use of [Rivers'] probable cause hearing testimony at Estrella's trial." Id., 720. Rivers sought specific performance of his plea agreement. Id. Our Supreme Court agreed that Rivers upheld his end of the bargain, which benefitted the state, and determined that fairness required that he

receive the benefit of his bargain and ordered specific performance of the plea agreement. Id., 734. *Rivers* is further distinguishable from the case at hand because in *Rivers,* the state, not the court, reneged on the plea agreement.

For the foregoing reasons, we conclude that the court did not violate the defendant's constitutional rights to due process and protection against double jeopardy. The court withdrew its plea offer of no jail on the basis of new information in the presentence investigation report, or a new appreciation of information in the report. The court offered the defendant a six month plea offer or the opportunity to withdraw his plea of nolo contendere. The defendant declined both the six month plea offer and to withdraw his plea. By vacating the defendant's plea of nolo contendere, the court placed the defendant in precisely the same position he was in before entering his plea.

The judgment is affirmed.

In this opinion the other judges concurred.