STATE OF CONNECTICUT *v.* PETER J. SEBBEN
(AC 34655)

Gruendel, Lavine and Beach, Js.

Argued April 11—officially released September 10, 2013

*Hubert J. Santos*, with whom, on the brief, were *Hope C. Seeley* and *Jessica M. Santos*, for the appellant (defendant).

*Michael Proto*, assistant state's attorney, with whom, on the brief, were *David Shepack*, state's attorney, and

*Dawn Gallo*, senior assistant state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. The defendant, Peter J. Sebben, filed this appeal after the trial court denied his motion to dismiss the criminal charges against him. The defendant based his motion to dismiss on double jeopardy grounds after his plea bargain was rejected and the trial court permitted the state to file a second amended information reinstating the original charges. The state claims that this court lacks subject matter jurisdiction to consider this interlocutory appeal because the defendant has failed to raise a colorable claim of double jeopardy. Under the circumstances of this case, we agree with the state that the defendant has failed to raise a colorable claim of double jeopardy pursuant to *State* v. *Thomas*, 296 Conn. 375, 995 A.2d 65 (2010). We therefore lack jurisdiction and thus dismiss the appeal.

The following facts and procedural history are relevant. The defendant and the victim, Tonya McKay, were in an on-again, off-again, sometimes violent, relationship. At approximately 6 a.m. on January 1, 2000, the defendant drove the victim to the emergency department of Charlotte Hungerford Hospital in Torrington. The victim was unresponsive and appeared to be suffering from a head injury. The defendant informed hospital personnel that the victim had injured herself by banging her head on the floor and that he became aware of her injury when she soiled herself in bed. Emergency department personnel saw no evidence of soiling, but they observed marks and bruises on the victim's body. They, and later police, also observed what appeared to be a fresh scratch on the defendant's neck. At approximately 8 a.m., an emergency department physician telephoned the Torrington Police Department to report that

a twenty-seven year old female had been brought to the hospital and that she may have been assaulted.

To examine the victim, emergency department personnel had to remove her clothing, which they placed in a patient belongings bag. They gave the bag to the defendant. The authorities were subsequently unable to locate the clothing the victim was wearing when she arrived at Charlotte Hungerford Hospital. After 8 a.m. on the morning in question, one of the victim's neighbors saw the defendant enter the victim's home and emerge carrying some items of clothing.

Later that morning, the victim was taken to Hartford Hospital. The defendant appeared at Hartford Hospital and engaged in a verbal dispute with the victim's parents, Samuel McKay and JoAnn McKay. The defendant gave the victim's parents the bag from Charlotte Hungerford Hospital, which contained items of clothing and the victim's purse. The clothing in the bag was not the clothing the victim was wearing when she entered Charlotte Hungerford Hospital.

Hartford Hospital personnel determined that the victim was brain dead. On January 7, 2000, the victim was removed from life support equipment and died. Thereafter, police interviewed medical personnel, the victim's parents, her neighbors, and the defendant. The police obtained a number of search and seizure warrants, which they executed at the victim's home in New Hartford, the defendant's home in Winchester, and on the defendant's person. Police found bite marks on the defendant's body that, according to a dentist, were caused by the victim. After reviewing the victim's medical records, autopsy report, and police reports, the chief medical examiner certified that the victim's death was a homicide caused by blunt force trauma to her head.

On December 28, 2004, the state charged the defendant with one count of manslaughter in the first degree

in violation of General Statutes § 53a-55 and one count of tampering with or fabricating physical evidence in violation of General Statutes § 53a-155. Following numerous pretrial conferences, the defendant offered to plead nolo contendere to misdemeanor charges. On November 29, 2006, the date of the defendant's plea hearing, the state filed a first substitute information charging the defendant with criminally negligent homicide in violation of General Statutes § 53a-58 and reckless endangerment in the first degree in violation of General Statutes § 53a-63. The defendant pleaded nolo contendere to those charges. The plea agreement did not include an agreed-upon punishment. The victim's parents were not present at the plea hearing, but the prosecutor represented that they had agreed to the plea bargain, believing "that this would be the most appropriate way to proceed under all the circumstances." The prosecutor stated that the victim's parents would be present and speak at the sentencing hearing.

Before the court, *Brunetti, J.*, accepted the defendant's nolo contendere plea, it addressed the defendant. The court stated that each of the crimes to which the defendant was pleading nolo contendere was a class A misdemeanor that carried a penalty of one year in prison, a fine of $2000, or both. The maximum penalty the defendant faced was two years in prison and a fine of $4000. The court also canvassed the defendant, including asking whether the facts represented by the prosecutor supported the plea. Defense counsel stated in response to the court's question: "In substance, those are the facts. There is a great dispute on some of the facts, and they're going to be addressed in a sentencing memorandum. But in substance, those are the facts." The court found that the defendant's plea was knowingly and voluntarily made with the effective assistance of counsel and that there was a factual basis for the

plea. The court then stated: "The matter's being *continued for a presentence investigation* due February 9, [2007]." (Emphasis added.)

The parties again appeared before Judge Brunetti on May 25, 2007. At that time, the court noted that the case had been set down for sentencing, but had been continued so the court could review the file more thoroughly. The court stated that it had "had another occasion to read the police reports, the medical documentation, the [presentence investigation report], the sentencing memoranda filed . . . on behalf of [the victims'] parents and the defense.[1] The court has found this to be a very difficult decision to make. It was brought to my attention that there are some discrepancies in the [presentence investigation report] that was prepared by the state, some questions concerning the information in that [presentence investigation report]. In view of that, the court is going to order a new presentence investigation in this case basically for the purpose that I want to be fair to everybody involved in this case." The court again continued sentencing until August 17, 2007.

On August 17, 2007, the prosecutor, the victim's parents,[2] the defendant, and defense counsel addressed

---

[1] In his sentencing memorandum, the defendant requested no jail time and a suspended sentence.

[2] The victim's parents spoke at the sentencing hearing. They disputed the portions of the defendant's sentencing statement regarding the victim's mental health, and acknowledged evidentiary issues surrounding the victim's death. They asked the court to impose the maximum two year sentence.

JoAnn McKay, the victim's mother, stated to the court in part: "We do not know how lawyers and judges determine sentences. We understand the ultimate charges. We know that the typical defense would destroy our daughter's memory in the process of trying to escape a twenty year jail sentence that was possible for the defendant. We agreed to a plea bargain because it has been so long, and we are emotionally drained and because we have to have closure at least on the state's legal process. The pain will always be with us. [The victim] will never again enjoy a breath of fresh air or enjoy a sunny day. We don't seek vengeance, Your Honor. We just want some justice."

the court. When the court addressed the defendant, it informed him that it had read his sentencing memorandum, the arrest warrant application, the sentencing materials provided by the victim's parents, and the two presentence investigation reports. The court stated in part: "This case involves . . . the death of a twenty-seven year old woman, whether or not [the defendant] was the cause of that death or could have prevented that death, this court does not know. The evidence is certainly conflicted. However, a twenty-seven year old woman is dead, and the last person who was with her was [the defendant].

"One of the reasons we have presentence investigations and presentence memorandum, presentencing information, is so the court can decide if the plea arrangement which in fact was entered into is an appropriate one, and I appreciate the fact that this case has gone on for seven and a half years and everyone needs closure. However, the court cannot ignore the fact of the death of this young woman in these circumstances. The court therefore finds, based on everything that I have heard, read, said, and did in this case, that the plea bargain in this case is not appropriate."

The court afforded the defendant the opportunity to withdraw his plea. Defense counsel immediately withdrew the defendant's plea.[3] The court set the case down for another pretrial hearing on October 2, 2007. The court also granted the state the right to file a substitute information. On August 22, 2007, the state filed a second substitute information reinstating the initial charges against the defendant of manslaughter in the first degree and tampering with or fabricating evidence.[4]

---

[3] On appeal, the defendant makes much of the fact that his counsel withdrew his plea and contends that counsel did so without consulting him. This is not the proper forum in which the defendant may challenge the representation of counsel.

[4] On November 30, 2007, the defendant filed a motion for specific performance of the plea agreement. The court, *Sheldon, J.*, denied the motion on November 24, 2010. The defendant filed an interlocutory appeal, which this

On March 2, 2012, the defendant filed a motion to dismiss the charges on the grounds that they were barred by the statute of limitations and violated the prohibition against double jeopardy. The state objected to the motion to dismiss. Following oral argument, the court, *Ginocchio, J.*, denied the defendant's motion to dismiss. Judge Ginocchio found the present case legally indistinguishable from *State* v. *Thomas*, supra, 296 Conn. 375.

The defendant appealed, claiming that the court improperly denied his motion to dismiss in violation of the constitutional prohibition against double jeopardy. The state filed a motion to dismiss the interlocutory appeal for lack of a final judgment. The state acknowledges that a *colorable* claim of double jeopardy generally falls within the second prong of *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983) ("so concludes the rights of the parties that further proceedings cannot affect them"), but asserts that under *State* v. *Thomas*, supra, 296 Conn. 375, the defendant's double jeopardy claim is *not* colorable because the court's acceptance of the defendant's plea was conditional. The state points out that the court was awaiting a presentence investigation report and a statement from the victim's parents. The state therefore contends this court lacks subject matter jurisdiction.[5] We agree that the defendant has

court dismissed. Our Supreme Court denied the defendant's petition for certification to appeal from the dismissal. See *State* v. *Sebben*, 301 Conn. 904, 17 A.3d 1045 (2011).

[5] The state filed a motion to dismiss the defendant's interlocutory appeal claiming that this court lacked subject matter jurisdiction with respect to the defendant's noncolorable claim of double jeopardy and statute of limitations defense. A panel of this court granted the motion to dismiss as to the statute of limitations defense, but "denied without prejudice to briefing the double jeopardy issue in the briefs on the merits." In its brief, the state claims that, "as a matter of law, as construed in [*State* v. *Thomas*, supra, 296 Conn. 375], jeopardy did not attach when the defendant's pleas were accepted by the trial court on November 29, 2008." The state asks this court to conclude that Judge Ginocchio properly denied the defendant's motion to dismiss the reinstated charges and to dismiss the defendant's appeal.

failed to raise a colorable claim of double jeopardy because his plea was conditional and he had no reasonable expectation of finality. Consequently, we conclude that his appeal has not been taken from a final judgment. We therefore grant the state's motion to dismiss and dismiss the appeal for lack of jurisdiction.

Whenever a jurisdictional question is raised, the court must resolve it before it may proceed further with an appeal. *Johnson* v. *Commissioner of Correction*, 258 Conn. 804, 813, 786 A.2d 1091 (2002). "It is axiomatic that appellate jurisdiction is limited to final judgments of the trial court. . . . [T]here is a small class of cases [however] that meets the test of being effectively unreviewable on appeal from a final judgment and therefore, is subject to interlocutory review. The paradigmatic case in this group involves the right against double jeopardy. . . . Because jeopardy attaches at the commencement of trial, to be vindicated at all, a colorable double jeopardy claim must be addressed by way of interlocutory review. The right not to be tried necessarily falls into the category of rights that can be enjoyed only if vindicated prior to trial, and, consequently, [is reviewable in an interlocutory appeal] . . . ." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Crawford*, 257 Conn. 769, 774–75, 778 A.2d 947 (2001), cert. denied, 534 U.S. 1138, 122 S. Ct. 1086, 151 L. Ed. 2d 985 (2002). Although the defendant claims on appeal that Judge Ginocchio improperly denied his motion to dismiss the charges, the essence of his claim is that Judge Brunetti violated the double jeopardy protection afforded him by vacating his guilty plea and permitting the state to reinstate the original charges. We conclude that the defendant has failed to raise a colorable claim of double jeopardy and disagree that his nolo contendere plea was unconditional and that he had a reasonable expectation of finality at the time he entered his plea. See *State* v. *Thomas*, supra, 296 Conn. 395.

The issue of whether a trial court violates the prohibition against double jeopardy when it vacates a defendant's guilty plea conditioned on the court's review of a presentence investigation report was decided by our Supreme Court in *State* v. *Thomas,* supra, 296 Conn. 375. In *Thomas,* the court concluded that that defendant *"did not have a reasonable expectation of finality in his plea agreement because the trial court's acceptance of his plea was conditional rather than unequivocal."* (Emphasis added.) Id., 395. Although the defendant in this case claims that the facts here are distinguishable from those in *Thomas,* we conclude that any factual differences do not alter the conclusion that Judge Brunetti's acceptance of the defendant's plea of nolo contendere was conditional. The defendant's plea was conditioned on the court's review of the presentence investigation report and the right of the victim's parents to participate meaningfully in the sentencing.

"The double jeopardy clause of the United States constitution guarantees that no person shall be subject for the same offense to be twice put in jeopardy of life or limb . . . . U.S. Const., amend. V. The double jeopardy clause provides several protections—it protects against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense. . . . The policy justifications for prohibiting successive prosecutions include: (1) furthering society's interest in protecting the integrity of final judgments; and (2) protecting individuals from prosecutorial overreaching and the continued embarrassment, anxiety and expense associated with repeated attempts to convict." (Citation omitted; internal quotation marks omitted.) *State* v. *Thomas,* supra, 296 Conn. 383–84. "The double jeopardy clause will bar a second prosecution only if jeopardy attach[ed] in an earlier proceeding." (Internal quotation marks omitted.) Id., 384.

"Courts have focused on the following four considerations when deciding the point at which jeopardy attaches to a guilty plea: (1) whether the court has accepted the defendant's guilty plea; (2) whether the court has rendered judgment and sentenced the defendant; (3) *whether the court's acceptance of the plea was conditional*; and (4) whether the circumstances surrounding the court's acceptance of the plea implicate the policy concerns underlying the double jeopardy protection. The first two considerations focus on specific points in the judicial process. . . . The last two considerations focus on the nature of the court's acceptance of a guilty plea." (Citations omitted; emphasis added.) Id., 386. Our Supreme Court has determined that the question of whether jeopardy attaches to a guilty plea must be determined "by *analyzing the particular circumstances* relating to the guilty plea in light of the policy considerations underlying the double jeopardy protection." (Emphasis added.) Id., 388.

In *Thomas*, our Supreme Court emphasized that "as a matter of Connecticut law, the trial court's acceptance of [a] defendant's guilty plea [is] *conditioned* upon the results of the presentence investigation. A trial court lacks the authority to unconditionally accept a guilty plea prior to considering the results of a pending presentence investigation report." (Emphasis in original.) Id. In reaching this conclusion, the court cited Practice Book § 43-10.[6] Id.

---

[6] Practice Book § 43-10 provides in relevant part: "Before imposing a sentence or making any other disposition after the acceptance of a plea of . . . nolo contendere . . . the judicial authority shall, upon the date previously determined for sentencing, conduct a sentencing hearing as follows:

"(1) The judicial authority shall afford the parties an opportunity to be heard and, in its discretion, to present evidence on any matter relevant to the disposition, and to *explain or controvert the presentence investigation report* . . . .

"(2) The judicial authority shall allow the victim and any other person directly harmed by the commission of the crime a reasonable opportunity to make, orally or in writing, a statement with regard to the sentence to be imposed. . . ." (Emphasis added.)

## I

On appeal, the defendant claims that the court improperly denied his motion to dismiss the charges in the second amended information because the defendant's plea of nolo contendere was not conditional and he had a reasonable expectation of finality. In his brief, the defendant presents four arguments as to why *State v. Thomas*, supra, 296 Conn. 375, is not controlling: (1) the presentence investigation report was not statutorily mandated, (2) the plea negotiations pertained to his plea, not the plea agreement, (3) the original charges were not pending at the time he pleaded nolo contendere, and (4) the court was not waiting for the victim's parents to exercise their right to participate in sentencing. None of the defendant's arguments presents a legally meaningful distinction from *Thomas*.

## A

The defendant first claims that a presentence investigation report was not statutorily mandated in this case, as he was not charged with a felony in the first amended information. The defendant's argument is unpersuasive because our statutes and rules of practice permit the trial court to exercise its discretion to order a presentence investigation for *any* crime. See General Statutes (Rev. to 1999) § 54-91a (a)[7] and Practice Book § 43-3.[8]

---

[7] General Statutes (Rev. to 1999) § 54-91a (a) provides in relevant part: "No defendant convicted of a crime, other than a capital felony, the punishment for which may include imprisonment for more than one year, may be sentenced, or his case otherwise disposed of, until a written report of investigation by a probation officer has been presented to and considered by the court, if (1) the defendant is so convicted for the first time in this state . . . but any court may, in its discretion, order a presentence investigation for a defendant convicted of any crime or offense other than a capital felony."

[8] Practice Book § 43-3 (a) provides in relevant part: "If the defendant is convicted of a crime other than a capital felony, the punishment for which may include imprisonment for more than one year, the judicial authority shall order a presentence investigation . . . . The judicial authority may, in its discretion, order a presentence investigation for a defendant convicted of any crime or offense."

Although a presentence investigation was not statutorily mandated here, § 54-91a (a) and our rules of practice; see Practice Book § 43-3; provide that the court may "in its discretion, order a presentence investigation for a defendant convicted of *any* crime or offense." (Emphasis added.) "Modern precepts of penology require that the discretion of a sentencing judge to impose a just and appropriate sentence remain unfettered throughout the sentencing proceedings. Where a presentence investigation report is statutorily mandated, a judge cannot make any promise or determination of the sentence he will impose before he has reviewed the report." (Internal quotation marks omitted.) *State* v. *Thomas*, supra, 296 Conn. 388–89, quoting *State* v. *DeJesus*, 10 Conn. App. 591, 603–604, 524 A.2d 1156 (1987). *DeJesus* relied on this court's decision in *State* v. *Schaeffer*, 5 Conn. App. 378, 387, 498 A.2d 134 (1985), overruled on other grounds by *State* v. *Das*, 291 Conn. 356, 368, 968 A.2d 367 (2009).

"The sole purpose [of a presentence investigation] is to enable the court, within limits fixed by statute, to impose an appropriate penalty, fitting the offender as well as the crime." (Internal quotation marks omitted.) *State* v. *Miller*, 56 Conn. App. 191, 201, 742 A.2d 402 (1999), cert. denied, 252 Conn. 937, 747 A.2d 4 (2000). The record is clear that the court was mindful of its role as the sentencing authority and the purpose of a presentence investigation report. In fact, in a further effort to understand the circumstances of this extremely serious case, the court ordered a second presentence investigation when it concluded there were factual discrepancies in the first presentence report. The court's ordering of a second presentence investigation reasonably can be interpreted as further evidence of the conditional nature of the defendant's plea.

Under the circumstances of this case, the court properly exercised its discretion, as permitted by statute,

to order a presentence investigation as a necessary component of its determination of the appropriate punishment. "At the time of the acceptance of a guilty plea where a presentence investigation report is necessary, there can be no unconditional promise of the court that a particular sentence will be imposed because that would violate the statutory mandate for such a report *and public policy*. Any bargain of the parties must be contingent upon its acceptance by the court after its review of the presentence investigation report. There is a difference between the entitlement of a defendant to a particular sentence and the expectation of the defendant that the trial court will follow the recommendation for a particular sentence." (Emphasis added.) *State* v. *Schaeffer*, supra, 5 Conn. App. 387.

Moreover, whether the defendant was charged with a felony or a misdemeanor and whether the presentence investigation was required by statute does not change the conditional nature of the court's acceptance of his plea. "[O]nce the trial court ordered the presentence investigation, the trial court's acceptance of the defendant's plea agreement necessarily became contingent upon the results of the presentence investigation report. Otherwise, the presentence investigation report would be little more than a nullity, and our law makes clear that these reports are to play a significant role in reaching a fair sentence. Simply put, any plea agreement must be contingent upon its acceptance by the court after [the court's] review of the presentence investigation report." (Internal quotation marks omitted.) *State* v. *Gregorio*, 137 Conn. App. 104, 121, 46 A.3d 1033, cert. denied, 307 Conn. 912, 53 A.3d 997 (2012). At the time the court accepted the defendant's plea, the court continued sentencing until it had reviewed the presentence investigation and other documents in the file. Although the court did not tell the defendant that his plea was

conditional, the fact that the defendant's plea was conditional was implicit in the court's continuing the matter for sentencing.

## B

The defendant next argues that *Thomas* does not control because *Thomas* pertained to a plea agreement, not the plea itself. The two cases are united, however, by the fact that the trial court in each case vacated a conditional guilty plea and addressed whether "the double jeopardy clause of the fifth amendment to the United States constitution bars a trial court from vacating a previously accepted guilty plea if the court later determines, on the basis of new information uncovered during the presentence investigation, that the sentence contemplated by the plea agreement is inappropriate." *State* v. *Thomas*, supra, 296 Conn. 377.

In *Thomas*, the parties had agreed to the length of the defendant's sentence; here, the length of the defendant's sentence had *not* been agreed upon. The fact that the length of the defendant's sentence was not part of the plea agreement is further evidence of the conditional nature of the plea.

"[J]eopardy does not attach at a hearing on a guilty plea until the plea is unconditionally accepted. . . . Until a final judgment is entered a court is free to reject the plea and plea agreement. . . . Rejection of one is rejection of the other." (Internal quotation marks omitted.) Id., 393, quoting *State* v. *Todd*, 654 S.W.2d 379, 383 (Tenn. 1983). As in *Thomas*, the totality of the circumstances surrounding the court's acceptance of the defendant's nolo contendere plea and the continuance of the case for sentencing indicate that the case had not concluded. Our Supreme Court has stated that "the rules of practice allow a trial court to abandon a previously accepted plea agreement due to the presentation of new information uncovered by a presentence

investigation report, impose a harsher sentence and give the defendant the option of withdrawing his plea." *State* v. *Thomas*, supra, 296 Conn. 393–94. Although the record does not identify a specific fact that the court relied upon in deciding that the defendant's plea bargain was not appropriate, the court obviously was troubled by irregularities in the first presentence investigation report and requested a second independent presentence investigation.[9] The powerful statements from the victim's parents may have influenced the court's decision that the charges alleged against the defendant in the first amended information were not appropriate for the corpus delicti, i.e, the unexplained death of a twenty-seven year old woman who was last in the company of the defendant.

*"The imposition of an appropriate sentence is the function of the court regardless of the bargain of the parties."* (Emphasis added; internal quotation marks omitted.) *State* v. *Gregorio*, supra, 137 Conn. App. 105–106. "[U]ntil sentence is pronounced, the trial court maintains power to impose any sentence authorized by law; and, though the sentencing judge may be conscience-bound to perform his own prior agreements with counsel and the parties, the court is not in law bound to impose a sentence that once seemed, but no longer seems, just and appropriate . . . . In those circumstances in which the judge cannot in conscience impose the sentence conditionally promised, it has been uniformly recognized that the only obligation he has is to grant the defendant the opportunity to withdraw his guilty plea." (Emphasis omitted; internal quotation marks omitted.) Id., 120–21. In this case, it was the

---

[9] As we previously have stated, "[g]iven the important role plea bargaining plays in our criminal justice system, courts should not blithely disavow plea offers." *State* v. *Gregorio*, supra, 137 Conn. App. 126. It is essential, however, that the court retain broad discretion to abrogate a plea agreement when "new information [is brought to] light"; id.; or when the court gains "new insights into an offender's criminal behavior or background . . . ." Id.

court's responsibility to ensure that the sentence was just and appropriate.

## C

The defendant also argues that because the prosecutor informed the court during the plea hearing that the victim's parents had agreed to the plea agreement, their constitutional right to participate in sentencing was satisfied and therefore the court accepted his plea unconditionally. The defendant also notes that in *Thomas*, the victim brought new information to light at the time of sentencing. Whether the prosecutor told the court the position of the victim's parents with respect to the plea agreement is not the deciding factor. The victim's parents were entitled to address the court at the time of sentencing.

Pursuant to our state constitution,[10] the trial court must provide the victim, or the victim's representative, with an opportunity to participate meaningfully at the time of the defendant's sentencing. Id., 121. "[W]hen the victim chooses to make a statement, acceptance of a guilty plea must be contingent upon hearing from the victim in order to provide the victim with a meaningful right to participate in the plea bargaining process." *State v. Thomas*, supra, 296 Conn. 390–91. Although the prosecutor informed the court that the victim's parents were accepting of the plea agreement, he also informed the court that the victim's parents would be present to address the court at the time of sentencing. "[W]hen a presentence investigation is pending and the court is

---

[10] The constitution of Connecticut, article first, § 8 (b), as amended by articles seventeen and twenty-nine of the amendments, provides in relevant part: "In all criminal prosecutions, a victim, as the general assembly may define by law, shall have the following rights . . . (7) the right to object to or support any plea agreement entered into by the accused and the prosecution and to make a statement to the court prior to the acceptance by the court of the plea of guilty or nolo contendere by the accused; (8) the right to make a statement to the court at sentencing . . . ."

awaiting a victim's anticipated statement, any acceptance of the defendant's guilty plea is conditioned implicitly on the results of the presentence investigation report and the victim's statement." Id., 391. In this case, the defendant had no reasonable expectation of finality at the time he entered his plea of nolo contendere because the plea was contingent upon the right of the victim's parents to address the court at sentencing.

## D

The defendant also attempts to distinguish *Thomas* by arguing that the original charges of manslaughter in the first degree and tampering with or fabricating physical evidence were not pending at the time he pleaded nolo contendere to the charges in the first substitute information, i.e., criminally negligent homicide and reckless endangerment. By way of contrast, the defendant in *Thomas* had agreed to plead guilty to some of the charges against him; the remaining charges were still pending at the time of sentencing. Id., 378, 394. The defendant claims therefore that reinstating the original charges constitutes a violation of the double jeopardy clause. The defendant's argument fails because the substitute information was part of the plea agreement. When the defendant withdrew his plea, he was put back into the same position he was in before he entered into the plea agreement.

"Plea agreements stem from the desire of the state to obtain a prompt disposition of criminal charges with the certainty of conviction, and from the agreement of the defendant to exchange his constitutional right to a trial, with all of its constitutional safeguards, for the certainty of a known and reduced penalty. The defendant is engaged in barter for the length of his incarceration. . . . The term of imprisonment is a defendant's bottom line and his paramount interest. The length of time a defendant must spend incarcerated is clearly

crucial to a decision involving whether he should plead guilty. . . . When the defendant's reasonable expectation that his sentence will not exceed a particular term is to be defeated because of the trial court's decision, in the proper exercise of its discretion, that a sentence in excess of an agreed term is appropriate, the defendant must be given the opportunity by the trial court to withdraw his plea. . . . When a defendant is permitted to withdraw his plea under such circumstances, he is returned to precisely the same position he had occupied before entering the plea." (Internal quotation marks omitted.) *State* v. *Gregorio*, supra, 137 Conn. App. 106. The defendant now is in the same position he was in prior to entering into the plea bargain that was conditionally accepted by the court pending receipt of a presentence investigation and the meaningful participation of the victim's parents.[11] The defendant's double jeopardy rights have not been violated in this case. We therefore conclude that Judge Ginocchio properly denied the defendant's motion to dismiss the reinstated charges.

## II

As stated in footnote 5 of this opinion, the state previously filed a motion to dismiss the appeal, as a matter of law, because the defendant failed to raise a colorable claim of double jeopardy and the denial of the defendant's motion to dismiss the reinstated charges is not

---

[11] In its brief, the state cites a number of federal cases discussing the nature of plea bargaining; see *Santobello* v. *New York*, 404 U.S. 257, 262, 92 S. Ct. 495, 30 L. Ed. 2d 472 (1971) (governed by contract principles); and the remedy when the agreement has been breached by either the state or the defendant. See, e.g., id., 263 n.2 ("[i]f the state court decides to allow withdrawal of the plea, the petitioner will, of course, plead anew to the original charge"); *United States* v. *Gerard*, 491 F.2d 1300, 1306 (9th Cir. 1974) (if defendant pleaded to one count and prosecutor dismissed others, reasonably apparent dismissal was in consideration of plea; if defendant succeeds in withdrawing plea, he should not be able to object to prosecutor's reviving other counts).

a final judgment for purposes of appeal. We have concluded that this appeal does not raise a colorable claim of double jeopardy; see part I of this opinion; and therefore it does not fall into that small class of cases "that meets the test of being effectively unreviewable on appeal from a final judgment and therefore, is subject to interlocutory review." (Internal quotation marks omitted.) *State* v. *Crawford*, supra, 257 Conn. 775. The denial of the defendant's motion to dismiss the charges against him neither "terminates a separate and distinct proceeding"; *State* v. *Curcio*, supra, 191 Conn. 31; nor "so concludes the rights of the parties that further proceedings cannot affect them." Id. This court therefore lacks subject matter jurisdiction, and we are required to grant the state's motion to dismiss.

The appeal is dismissed.

In this opinion the other judges concurred.