******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# JERMAINE LITTLE *v.* COMMISSIONER
# OF CORRECTION
## (AC 38597)

Lavine, Alvord and Beach, Js.

*Syllabus*

The petitioner, who had been convicted, on a plea of guilty, of the crime of kidnapping in the first degree, sought a writ of habeas corpus, claiming, inter alia, that his plea was invalid because, at the time he pleaded guilty, he was not aware of the additional element of intent, which was enunciated by our Supreme Court in *State* v. *Salamon* (287 Conn. 509) four years after his conviction. Specifically, he claimed that he did not know or understand that, as set forth in *Salamon*, to be guilty of kidnapping in the first degree, he had to intend to prevent the victim's liberation for a longer period of time or to a greater degree than that which was necessary to commit a separate crime. At trial, the petitioner had pleaded guilty to kidnapping pursuant to a negotiated plea agreement, after which the state nolled charges against him of burglary in the first degree and robbery in the first degree. The habeas court rendered judgment denying the habeas petition in part and, thereafter, denied the petition for certification to appeal, and the petitioner appealed to this court. On appeal, he claimed that *Salamon* should be applied retroactively to his case because there is no differentiation between a conviction obtained after a trial or by way of a guilty plea, and there was a risk that his conviction did not comport with the due process requirements for guilty pleas. *Held*:

1. The habeas court abused its discretion in denying the petition for certification to appeal as to the petitioner's claim that *Salamon* should apply retroactively to his conviction; the impact of *Salamon* on collateral attacks on final judgments in cases in which the petitioner pleaded guilty to only the crime of kidnapping has not yet been addressed by any appellate court of this state and, thus, the question raised by the petitioner was adequate to deserve encouragement to proceed further, and this court resolved that issue in a manner different from the way it was resolved by the habeas court.

2. The petitioner could not prevail on his claim that his guilty plea violated his right to due process and, thus, was invalid because it was not made knowingly, intelligently and voluntarily in light of the reinterpretation in *Salamon* of the kidnapping statutes: because there was no binding precedent as to whether *Salamon* should be applied retroactively to collateral attacks on a kidnapping conviction when the defendant pleaded guilty to only that charge pursuant to a plea agreement, in deciding that issue this court adopted the rule and reasoning of the plurality opinion in *Luurtsema* v. *Commissioner of Correction* (299 Conn. 740), which adopted a general presumption that *Salamon* applies retroactively in habeas corpus proceedings, but left open the possibility that there could be situations in which the traditional rationales underlying the writ of habeas corpus may not favor retroactive application; moreover, traditional rationales underlying the writ of habeas corpus did not favor applying *Salamon* retroactively in the present case, as there was no risk that the petitioner stood convicted of an act that the law did not make criminal or that he faced a punishment that the law could not impose on him, and the state relied sufficiently to its detriment on our Supreme Court's interpretation of our kidnapping statutes prior to *Salamon* when constructing the terms of the petitioner's plea agreement such that applying *Salamon* retroactively in the present case would be inappropriate.

3. The petitioner's claim that, because his guilty plea was invalid and his conviction had to be vacated, he was entitled to the presumption of innocence and, thus, was actually innocent of the kidnapping charge, was not reviewable; although the petitioner raised a claim in his second habeas petition that he was actually innocent of the kidnapping charge because he did not intend to prevent the victim's liberation for a longer period of time or to a greater degree than that which was necessary to

commit a separate crime, his petition for certification to appeal raised only a generic claim that he was actually innocent, and the claim on appeal was never distinctly raised before the habeas court, which, therefore, could not have ruled on it in a manner adverse to the petitioner.

Argued May 30—officially released October 17, 2017

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Fuger, J.*; judgment denying the petition in part; thereafter, the court denied the petition for certification to appeal, and the petitioner appealed to this court. *Affirmed.*

*Naomi T. Fetterman*, assigned counsel, for the appellant (petitioner).

*Rita M. Shair*, senior assistant state's attorney, with whom were *Kevin D. Lawlor*, state's attorney, and, on the brief, *Jo Anne Sulik*, supervisory assistant state's attorney, for the appellee (respondent).

*Opinion*

ALVORD, J. The petitioner, Jermaine Little, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his second petition for a writ of habeas corpus (second habeas petition). He claims that the habeas court (1) abused its discretion by denying his petition for certification to appeal; (2) improperly concluded that his guilty plea to kidnapping in the first degree was knowing, intelligent, and voluntary in light of our Supreme Court's subsequent reinterpretation of our kidnapping statutes in *State* v. *Salamon*, 287 Conn. 509, 949 A.2d 1092 (2008); and (3) improperly concluded that he was not actually innocent of kidnapping in the first degree. We conclude that the habeas court abused its discretion by denying the petition for certification to appeal, but that the habeas court properly denied the petitioner's second habeas petition. Accordingly, we affirm the judgment of the habeas court.

The following factual and procedural history is relevant to this appeal. On September 9, 2003, the petitioner and three other men abducted the victim, Jerry Brown, at gunpoint as he left his business in Bridgeport. *Little* v. *Warden*, Superior Court, judicial district of Tolland, Docket No. CV-06-4000949-S, 2008 WL 4415754, *1 (September 15, 2008) (*Little I*). The men drove up to Brown in a white Mazda minivan. Id. Three of the men exited the minivan, forced Brown into his own car, and demanded his money, threatening to kill him if he did not comply. Id. When Brown said that his money was at his house, they drove with Brown to his house in Shelton. Id. While en route, the minivan pulled alongside Brown's car, and the driver motioned the men in Brown's car to call him, which they did, using Brown's cell phone. Id. When they arrived at Brown's house, the men removed approximately $25,000 to $28,000 in cash, checks, and jewelry from the safe in his bedroom. Id.

Brown reported the incident to the police, provided a written statement describing the events and his abductors, and identified the petitioner from a photographic array as the driver of the minivan and the fourth person to enter his house. Id., *3 and n.1. The subsequent investigation revealed that the phone number that Brown's abductors had called with his phone while driving to his house was the petitioner's phone number and that the petitioner was known to drive a white Mazda minivan. Id., *3. Detectives then interviewed the petitioner concerning his involvement in the Brown abduction and robbery. In a signed incident report, Detective Richard S. Yeomans reported that the petitioner "admitted to being involved in the [k]idnapping and [r]obbery . . . . He stated [Kyle] Glenn, [James] Freelove, and [Kevin] Harrison went into the house with Brown while he waited outside in his vehicle." Yeomans further reported that Freelove had "admitted to being involved

with the kidnapping and robbery of Jerry Brown in Shelton. He further stated Jermaine Little, Kevin Harrison and Isaac Peoples were the other participants in the kidnapping and robbery. Freelove stated he and Harrison were in Beardsley Terrace when Little pulled up to them and asked if they wanted to do a 'job' with him. Freelove stated Little then went [to] pick up Peoples. . . . Peoples and Little were armed with semi automatic handguns." Freelove explained that, after they abducted Brown, he, Harrison and Peoples drove with Brown in Brown's car while the petitioner followed them in his van. Freelove "stated when they arrived at Brown's house they all went into the house including Little."

The petitioner subsequently was charged in state court with kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (B),[1] burglary in the first degree in violation of General Statutes § 53a-101, and robbery in the first degree in violation of General Statutes § 53a-134 (state case).[2] The petitioner was further charged in federal court with being a felon in possession of a firearm in violation of 18 U.S.C. § 922 (g) (1) (federal case).[3] *Little* v. *United States*, Docket No. 3:05-CV-1674 (MRK), 2006 WL 2361723, *1 (D. Conn. August 15, 2006). During this time, the petitioner also had an ongoing state narcotics case, for which he received a sentence of eight years of imprisonment while the state and federal cases remained pending.

Although "[t]he petitioner initially pleaded not guilty and consistently exhibited an intent to take the case to trial"; *Little I*, supra, 2008 WL 4415754, *2; he ultimately decided to plead guilty pursuant to separate written plea agreements with the state and the federal government. Under the terms of those agreements, the petitioner agreed to plead guilty to kidnapping in the first degree in the state case and to being a felon in possession of a firearm in the federal case. In exchange, the state and the federal government agreed to recommend to their respective sentencing courts a sentence of fifteen years and eight months of imprisonment, and to request that the state and federal sentences run concurrently. The parties further agreed that it would be left to the discretion of the sentencing courts whether to run those sentences concurrently with or consecutively to the eight year sentence that the petitioner had begun serving in the narcotics case.

On November 29, 2004, the petitioner pleaded guilty in federal court to being a felon in possession of a firearm. *Little* v. *United States*, supra, 2006 WL 2361723, *1. On December 22, 2004, the petitioner pleaded guilty to kidnapping in the first degree. At the beginning of the plea hearing, the prosecutor informed the court, *Carroll, J.*, that the petitioner was pleading guilty pursuant to a written plea agreement, and she briefly explained the terms of that agreement. The prosecutor

then informed the court that "counsel is telling me [that the petitioner] again is making clear he wishes to reject the state's offer. And if that's so, I'm just going to ask that the court make full inquiry so that we don't later have a collateral proceeding claiming that his lawyer didn't inform him or that he wasn't aware of these things." The prosecutor expressed her surprise that the petitioner would repudiate the plea agreement. She observed that the petitioner was currently exposed to a maximum term of imprisonment of sixty-five years in the state case, that his sentencing exposure would increase if the state charged him with conspiracy,[4] and that, if the petitioner rejected the plea agreement, the state could seek a sentence of more than fifteen years and eight months imprisonment.

The court briefly canvassed the petitioner to ensure that he understood the terms of his plea agreement, that he did not have to plead guilty, and that it was his decision alone whether to plead guilty. After discussing the matter with trial counsel, the petitioner represented, through trial counsel, that he was ready to plead guilty. The petitioner pleaded guilty to kidnapping in the first degree,[5] and the prosecutor recited the factual basis for the guilty plea[6] and reiterated the terms of the plea agreement.

The court next canvassed the petitioner to ensure that his plea was knowing, intelligent, and voluntary. During this canvass, the petitioner confirmed, inter alia, that he understood the terms of his plea agreement; he had had enough time to speak with his attorney about the case; his attorney had explained to him the nature and elements of kidnapping in the first degree; his attorney had reviewed with him all of the state's evidence against him; the prosecutor's recitation of the facts supporting his guilty plea was "essentially correct"; nobody was threatening or forcing him to plead guilty; and he was voluntarily pleading guilty because he was in fact guilty. The court found that the petitioner's plea was knowing, intelligent, and voluntary and accepted it.

The petitioner was subsequently sentenced, in accordance with the terms of his plea agreement, to fifteen years and eight months of imprisonment in the state case and the federal case, and those sentences were run concurrently with each other and with the petitioner's sentence in the narcotics case. The prosecutor in the state case further indicated at the sentencing hearing that she had entered a nolle prosequi with respect to the petitioner's remaining charges of burglary in the first degree and robbery in the first degree.

On February 3, 2006, the petitioner filed his first petition for a writ of habeas corpus (first habeas petition), in which he alleged various claims of ineffective assistance of trial counsel.

On July 1, 2008, while the first habeas petition

remained pending, our Supreme Court decided *State* v. *Salamon*, supra, 287 Conn. 517–18, 531, 542, in which it abrogated thirty years of kidnapping jurisprudence. Specifically, the court held for the first time that to convict a defendant of a kidnapping in conjunction with another crime, the state must prove that the defendant "intend[ed] to prevent the victim's liberation for a longer period of time or to a greater degree than that which is necessary to commit the other crime." Id., 542.

On September 15, 2008, the first habeas court, *A. Santos, J.*, denied the first habeas petition. *Little I*, supra, 2008 WL 4415754, *1. The first habeas court, in part, rejected the petitioner's claims of ineffective assistance of counsel because it concluded that, even if it presumed that trial counsel rendered deficient performance during the pleading process, the petitioner failed to prove prejudice. Id., *3. The first habeas court observed: "The evidence clearly reveals that the petitioner was present, with a firearm, in Brown's home when the robbery took place. It also reveals that the petitioner drove the rest of the kidnappers to Brown's workplace to set up the kidnapping and robbery. . . . In the absence of any compelling contrary evidence, this court cannot say that the petitioner would have been likely to be successful had he chosen to go to trial. Furthermore, the petitioner faced additional charges and, if he had chosen to go to trial, would have been exposed to a total possible sentence of sixty-five years. It is highly unlikely that he would have obtained a more favorable result than the fifteen years and eight months he received under the plea agreement. There would also be no guarantee that the sentence would be set up to run concurrently with the federal sentence he faced, as the plea agreement provided. . . . While it is clear that the petitioner had previously expressed a desire to go to trial, the record also reveals that he made the decision to accept the state's plea offer knowingly, intelligently and voluntarily." (Citations omitted.) Id., *3–4.

On February 22, 2013, the petitioner initiated this second habeas action. On June 9, 2015, the petitioner filed the operative habeas petition. In relevant part, the petitioner alleged in count one that his guilty plea was not knowing, intelligent, and voluntary because "he did not know or understand that in order to be convicted of kidnapping in the first degree under § 53a-92 (a) (2) (B), a criminal defendant needed to intend to restrain the victim for a longer period of time or to a greater degree than that which was necessary to commit or advance the commission of a separate felony" (due process claim). In count four, the petitioner alleged that he was actually innocent of kidnapping in the first degree because he "did not intend to prevent the victim's liberation for a longer period of time or to a greater degree than that which was necessary to commit a separate crime" (actual innocence claim).

On May 2, 2016, a one day trial was held. After hearing the evidence and argument from the parties, the habeas court, *Fuger*, *J.*, issued an oral ruling denying the second habeas petition as it pertained to the petitioner's due process and actual innocence claims.[7] *Little* v. *Warden*, Superior Court, judicial district of Tolland, Docket No. CV-13-4005250-S, 2016 WL 2935514, *3 (May 2, 2016) (*Little II*). On October 29, 2015, the habeas court denied the petition for certification to appeal. This appeal followed.

I

The petitioner first claims that the habeas court abused its discretion when it denied his petition for certification to appeal. We agree.

"In *Simms* v. *Warden*, 229 Conn. 178, 187, 640 A.2d 601 (1994), [our Supreme Court] concluded that . . . [General Statutes] § 52-470 (b) prevents a reviewing court from hearing the merits of a habeas appeal following the denial of certification to appeal unless the petitioner establishes that the denial of certification constituted an abuse of discretion by the habeas court. In *Simms* v. *Warden*, 230 Conn. 608, 615–16, 646 A.2d 126 (1994), [our Supreme Court] incorporated the factors adopted by the United States Supreme Court in *Lozada* v. *Deeds*, 498 U.S. 430, 431–32, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991), as the appropriate standard for determining whether the habeas court abused its discretion in denying certification to appeal. This standard requires the petitioner to demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . . A petitioner who establishes an abuse of discretion through one of the factors listed above must then demonstrate that the judgment of the habeas court should be reversed on its merits. . . . In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous. . . .

"The conclusions reached by the trial court in its decision to dismiss [a] habeas petition are matters of law, subject to plenary review. . . . [When] the legal conclusions of the court are challenged, [the reviewing court] must determine whether they are legally and logically correct . . . and whether they find support in the facts that appear in the record. . . . To the extent that factual findings are challenged, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous . . . . [A] finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there

is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Brewer* v. *Commissioner of Correction*, 162 Conn. App. 8, 12–13, 130 A.3d 882 (2015).

Turning to the petitioner's substantive claims, we have been unable to locate any case in which either this court or our Supreme Court has addressed the impact of *Salamon* on collateral attacks on final judgments rendered in cases in which the petitioner pleaded guilty to kidnapping.[8] Because such a question has not yet been addressed by any appellate court of this state, we conclude that the petitioner's claims are adequate to deserve encouragement to proceed further. See *Rodriguez* v. *Commissioner of Correction*, 131 Conn. App. 336, 347, 27 A.3d 404 (2011) (concluding that claim deserved encouragement to proceed further when no appellate case had decided precise issue), aff'd on other grounds, 312 Conn. 345, 92 A.3d 944 (2014); *Small* v. *Commissioner of Correction*, 98 Conn. App. 389, 391– 92, 909 A.2d 533 (2006), aff'd, 286 Conn. 707, 946 A.2d 1203, cert. denied sub nom. *Small* v. *Lantz*, 555 U.S. 975, 129 S. Ct. 481, 172 L. Ed. 2d 336 (2008). We further conclude that the habeas court abused its discretion by denying the petition for certification to appeal because we have resolved the issues raised by the petitioner in his second habeas petition in a different manner than the habeas court did. Accordingly, the habeas court abused its discretion when it denied the petition for certification to appeal. Nonetheless, we affirm the denial of the second habeas petition on the merits.

## II

We next address the petitioner's due process claim. The petitioner claims that his guilty plea is invalid because the record does not demonstrate that at the time he pleaded guilty he understood that to be guilty of kidnapping in the first degree he had to "intend to prevent the victim's liberation for a longer period of time or to a greater degree than that which is necessary to commit the other crime." (Emphasis omitted; internal quotation marks omitted.)

The petitioner is correct that a guilty plea cannot be considered voluntary in the constitutional sense if the record reflects that a defendant did not receive "real notice of the true nature of the charge against him . . . ." (Internal quotation marks omitted.) *State* v. *Johnson*, 253 Conn. 1, 38, 751 A.2d 298 (2000); accord *Henderson* v. *Morgan*, 426 U.S. 637, 645 n.13, 96 S. Ct. 2253, 49 L. Ed. 2d 108 (1976) ("A plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving . . . or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt. Without adequate notice

of the nature of the charge against him, or proof that he in fact understood the charge, the plea cannot be voluntary in this latter sense." [Citation omitted.]). Stated another way, if the record reveals that neither the petitioner, nor his counsel, nor the court correctly understood the essential elements of kidnapping in the first degree at the time that the petitioner pleaded guilty, the petitioner's guilty plea would be constitutionally invalid. See *Bousley* v. *United States*, 523 U.S. 614, 618, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998). Moreover, because the accused's clear understanding of the nature of the charge to which he is pleading guilty relates to the very heart of the protections afforded by the constitution, such a misunderstanding of the nature of the charge cannot be harmless. *United State* v. *Bradley*, 381 F.3d 641, 647 (7th Cir. 2004); see *Henderson* v. *Morgan*, supra, 644–45 (even if "the prosecutor had overwhelming evidence of guilt available" and trial counsel's advice to plead guilty was sound and wise, "[the defendant's] plea cannot support a judgment of guilt unless it was voluntary in a constitutional sense"); see also *Bousley* v. *United States*, supra, 618 ("[w]e have long held that a plea does not qualify as intelligent unless a criminal defendant first receives 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process' "); *State* v. *Childree*, 189 Conn. 114, 119, 454 A.2d 1274 (1983) ("[i]t is axiomatic that unless a plea of guilty is made knowingly and voluntarily, it has been obtained in violation of due process and is therefore voidable").

The petitioner's due process claim depends, however, on whether *Salamon* applies retroactively in his case.[9] That is, the only reason that the petitioner contends his guilty plea is invalid is because he was not aware of the additional element of intent enunciated by our Supreme Court in *Salamon*, four years after his conviction was rendered final. As a result, if we conclude that *Salamon* does not apply retroactively in the petitioner's case, his due process claim necessarily fails as well.

To address this retroactivity issue, it is necessary to review the unusual history and evolution of our kidnapping jurisprudence. "Under our Penal Code, the hallmark of a kidnapping is an abduction, a term that is defined by incorporating and building upon the definition of restraint. . . . In 1977, this court squarely rejected a claim that, when the abduction and restraint of a victim are merely incidental to some other offense, such as sexual assault, that conduct cannot form the basis of a guilty verdict on a charge of kidnapping. See *State* v. *Chetcuti*, 173 Conn. 165, 170–71, 377 A.2d 263 (1977). The court pointed to the fact that our legislature had declined to merge the offense of kidnapping with sexual assault or with any other felony, as well as its clearly manifested intent in the kidnapping statutes not to impose any time requirement for the restraint or

any distance requirement for the asportation. Id. On numerous occasions between that decision and the present petitioner's criminal trial, this court reiterated that position. . . . The court appeared to leave open the possibility that there could be a factual situation in which the asportation or restraint was so miniscule that a conviction of kidnapping would constitute an absurd and unconscionable result that would render the statute unconstitutionally vague as applied. . . . A kidnapping conviction predicated on the movement of the sexual assault victim from one room in her apartment to another, however, was deemed not to constitute such a result." (Citations omitted.) *Hinds* v. *Commissioner of Correction*, 321 Conn. 56, 66–68, 136 A.3d 596 (2016).

In *State* v. *Luurtsema*, 262 Conn. 179, 203–204, 811 A.2d 223 (2002) (*Luurtsema I*), overruled in part by *State* v. *Salamon*, 287 Conn. 509, 513–14, 949 A.2d 1092 (2008), decided two years before the petitioner pleaded guilty, our Supreme Court foreclosed the possibility that there could be a factual situation in which the movement or restraint of the victim was so miniscule that a conviction of kidnapping would constitute an absurd and unconscionable result as a matter of statutory interpretation.[10] In that case, the defendant, Peter Luurtsema, was convicted after a jury trial of kidnapping in the first degree, incidental to an attempted sexual assault and assault, during which he had moved the victim from a couch to the floor, forced the victim's legs apart, and manually choked her while attempting to perpetrate the sexual assault. Id., 200, 203. On direct appeal, Luurtsema argued that his movement of the victim was " 'incidental' " to the sexual assault and therefore "falls short of what is required for 'abduction' under the kidnapping statute." *Luurtsema I*, supra, 200. Our Supreme Court rejected Luurtsema's claim, stating that "[Luurtsema's] interpretation of the kidnapping statute is simply not the law in this state." Id., 202. The court reiterated that "all that is required under the statute is that the defendant have abducted the victim and restrained her with the requisite intent. . . . Under the aforementioned definitions [of abduct and restrain], the abduction requirement is satisfied when the defendant restrains the victim with the intent to prevent her liberation through the use of physical force." (Citation omitted.) Id., 201.

Six years later, in *Salamon,* our Supreme Court revisited and reversed this decades long kidnapping jurisprudence. After examining the common law of kidnapping, the history and circumstances surrounding the promulgation of our current kidnapping statutes and the policy objectives animating those statutes, the court concluded: "Our legislature, in replacing a single, broadly worded kidnapping provision with a gradated scheme that distinguishes kidnappings from unlawful restraints by the presence of an intent to prevent a victim's liberation, intended to exclude from the scope of the more

serious crime of kidnapping and its accompanying severe penalties those confinements or movements of a victim that are merely incidental to and necessary for the commission of another crime against that victim." *State* v. *Salamon*, supra, 287 Conn. 542. As a result, the court held that to convict a defendant of a kidnapping that was perpetrated in conjunction with another crime, the state must prove that the defendant "intend[ed] to prevent the victim's liberation for a longer period of time or to a greater degree than that which is necessary to commit the other crime." Id.

Following that decision, Luurtsema filed a habeas petition, challenging the legality of his kidnapping conviction. *Luurtsema* v. *Commissioner of Correction*, 299 Conn. 740, 743, 12 A.3d 817 (2011) (*Luurtsema II*). Pursuant to the joint stipulation of the parties, the habeas court reserved two questions of law to this court, which were subsequently transferred to our Supreme Court: "(1) whether *Salamon* and *Sansever-ino*[11] apply retroactively in habeas corpus proceedings; and (2) whether those cases apply in the petitioner's case in particular." (Footnote added.) Id. In a plurality opinion, our Supreme Court answered both reserved questions in the affirmative. Id.

When deciding the retroactivity issue, the threshold question for our Supreme Court was whether *Salamon* represented a change in or a mere clarification of the law. Id., 749 n.11. "If a state court deems its new interpretation to be a change, then the application of the statute to persons who were convicted prior to the adoption of the new rule would be decided as a matter of state retroactivity common law. . . . By contrast, if the court deems the new interpretation to be a mere clarification of what the law always has meant, then there is no issue of retroactivity per se. . . . Rather, the issue becomes whether the state has violated the petitioner's due process rights by convicting him under an incorrect interpretation of the law." (Citations omitted.) Id., 749–50 n.11.

The three justice plurality declined to address "the thorny question of whether [*Salamon*] represented the sort of clarification of the law for which the federal constitution *requires* collateral relief"; (emphasis in original) id., 751; by assuming that *Salamon* constituted a change in the law and deciding the retroactivity question as a matter of state common law. Id., 764 n.21. The plurality then rejected any per se rule of full retroactivity; id., 760; and, instead, adopted "a general presumption in favor of full retroactivity for judicial decisions that narrow the scope of liability of a criminal statute." Id., 764. The plurality cautioned that this general presumption "would not necessarily require that relief be granted in cases where continued incarceration would not represent a gross miscarriage of justice, such as where it is clear that the legislature did intend to crimi-

nalize the conduct at issue, if perhaps not under the precise label charged. In situations where the criminal justice system has relied on a prior interpretation of the law so that providing retroactive relief would give the petitioner an undeserved windfall, the traditional rationales underlying the writ of habeas corpus may not favor full retroactivity." Id. The plurality observed that "one can conceive of circumstances in which prosecutors rely on a prior interpretation of a statute to such an extent that retroactive application of a different subsequent interpretation might not be warranted." Id., 767. For example, "[i]f there are cases in which a petitioner was not convicted of the underlying assault, in reliance on a pre-*Salamon* interpretation of § 53a-92 (a) (2) (A), we have left open the possibility that retroactive relief may not be available." Id., 770.

After adopting this general presumption in favor of retroactivity, the plurality addressed whether *Salamon* should be applied retroactively in the petitioner's case. The plurality "agree[d] with [Luurtsema] that, as a matter of state common law, *Salamon* should be afforded fully retroactive effect in his particular case." Id., 751. The plurality reasoned: "This is not a case . . . in which the state, in selecting the crimes with which to charge [Luurtsema], can plausibly be said to have relied to its detriment on the prior interpretation of the kidnapping statutes." Id., 773. "Here, [Luurtsema] was charged with every crime for which he might reasonably have been held liable . . . ." Id., 768. That is, "the record discloses no indication that the state would have charged [Luurtsema] differently had it anticipated the subsequent interpretation of § 53a-92 (a) (2) (A) in *Salamon*." Id. The plurality further stated that it could not discern any evidence from the current record "that [Luurtsema] intended to restrain the victim more than was necessary to effect the underlying assault." Id., 773–74.

Justices Katz, Palmer, and McLachlan each filed concurring opinions in which no other justices joined. Justice Katz "wholly agree[d] with the plurality's thoughtful explanation as to why we should reject the state's call to adopt a per se rule against retroactivity and its equally persuasive rejection of the state's arguments against affording relief to [Luurtsema]." Id., 791 (*Katz, J., concurring*). She did not agree, however, with the plurality's "novel rule of retroactivity under our common-law authority, under which habeas courts may decline to afford relief 'where it is clear that the legislature did intend to criminalize the conduct at issue, if perhaps not under the precise label charged.' " Id., 775. Instead, she "conclude[d] that *Salamon* clarified the meaning of our kidnapping statutes"; id., 785; and, therefore, the federal due process clause required a per se rule of full retroactivity for *Salamon*. Id., 775. She further "conclude[d] that, even if it were necessary to decide this case under our common-law authority, we should adopt

a per se rule that decisions narrowing the interpretation of criminal statutes apply retroactively." Id.

Justice Palmer "agree[d] with much of the plurality opinion and concur[red] in the result that the plurality reache[d]." Id., 797 (*Palmer, J., concurring*). He acknowledged that "[t]he plurality may be correct that there is persuasive reason to reject a per se rule, but we need not resolve the issue to decide the present case because, as the plurality also concludes, the petitioner . . . is entitled to full retroactivity regardless of whether we adopt such a rule." Id. Justice Palmer expressed his reservation at deciding "the question of whether to adopt a per se rule in favor of full retroactivity under our common law"; id.; because "this court, in rejecting a per se rule for purposes of our common law, adopts a rule that is contrary to constitutional requirements, a result that should be avoided." Id., 798.

Finally, Justice McLachlan "concur[red] with the plurality reluctantly." Id., 798 (*McLachlan, J., concurring*). He concurred reluctantly because, although he "agree[d] with the holding of *Salamon*"; id.; he "disagree[d] with that portion of the analysis [in *Salamon*] in which the court concluded that for more than thirty years, and in innumerable cases, the courts of this state, including this court, have misconstrued our kidnapping statutes." Id., 799. He agreed with the plurality that "[i]n *Salamon*, this court adopted a 'new rule' expressly overruling the law in existence at the time of the petitioner's crime and conviction." Id. He further stated: "To date the United States Supreme Court has not required 'new' interpretations of statutes to be applied retroactively in criminal cases, and I would not so provide. . . . Although I would prefer to follow our long-standing principle of finality of judgments and would deny the petitioner the relief that he seeks, I am compelled to follow the precedent established by *Salamon*, and, accordingly, concur in the result." Id.

Because *Luurtsema II* was a plurality opinion, when deciding whether *Salamon* should be applied retroactively in the present case, we must first determine its precedential value. Our Supreme Court has instructed that "[w]hen a fragmented [c]ourt decides a case and no single rationale explaining the result enjoys the assent of [a majority of the] [j]ustices, the holding of the [c]ourt may be viewed as the position taken by those [m]embers who concurred in the judgments on the narrowest grounds . . . ." (Internal quotation marks omitted.) *State* v. *Ross*, 272 Conn. 577, 604 n.13, 863 A.2d 654 (2005), quoting *Marks* v. *United States*, 430 U.S. 188, 193, 97 S. Ct. 990, 51 L. Ed. 2d 260 (1977).

It appears that the only parts of the plurality opinion in *Luurtsema II* that have any precedential value are the court's affirmative answers to the reserved questions of whether *Salamon* applies retroactively in habeas corpus proceedings and to Luurtsema's case in particu-

lar. See *Hinds* v. *Commissioner of Correction*, supra, 321 Conn. 106–107 and n.3 (*Zarella, J., dissenting*). Those answers are the narrowest grounds on which a majority of the panel clearly agreed.

With respect to the first reserved question, although a majority of the court in *Luurtsema II* agreed that *Salamon* could be applied retroactively in collateral proceedings, there was no clear majority concerning how and to what extent *Salamon* should be applied retroactively. The three justice plurality adopted a general presumption of full retroactivity, subject to certain limited exceptions, while Justice Katz supported a per se rule in favor of full retroactivity. Neither Justice Palmer nor Justice McLachlan expressly endorsed a particular approach to retroactivity; they concurred only in the result reached by the plurality.

With respect to the second reserved question, the facts of the present case are sufficiently distinguishable from those in *Luurtsema II* such that the court's affirmative answer to the second reserved question also does not control the outcome of the present case. The petitioner was convicted after pleading guilty pursuant to a plea agreement with the state and federal government, and admitting his role in the Brown abduction and robbery. Luurtsema was convicted after a jury trial in which the jury was not instructed that, to find him guilty of kidnapping, it had to find beyond a reasonable doubt that he intended to prevent the victim's liberation for a longer period of time or to a greater degree than that which was necessary to commit the other crime. A majority of the court in *Luurtsema II* further appears to have agreed that this instructional error was not harmless beyond a reasonable doubt in light of the facts and circumstances of Luurtsema's case.

As a result, there is no binding precedent controlling the unique issue presently before us: whether *Salamon* should be applied retroactively to collateral attacks on a kidnapping conviction when the defendant pleaded guilty to that charge, and only that charge, pursuant to a plea agreement. Having given thorough consideration to the various approaches endorsed by the justices in *Luurtsema II*, we find the reasoning of the plurality of the court in *Luurtsema II* to be the most persuasive in the context of *Salamon*. As the United States Supreme Court has observed, one of the reasons that decisions narrowing the scope of a criminal statute should generally apply retroactively is "because [those decisions] necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal or faces a punishment that the law cannot impose upon him." (Internal quotation marks omitted.) *Schriro* v. *Summerlin*, 542 U.S. 348, 352, 124 S. Ct. 2519, 159 L. Ed. 2d 442 (2004); see also *Luurtsema II*, supra, 299 Conn. 759 (reasoning general presumption of retroactivity appropriate because "considerations of finality

simply cannot justify the continued incarceration of someone who did not commit the crime of which he stands convicted" and it would be unjust and amount to judicial usurpation of the legislature to permit defendant to be convicted of "two crimes where the legislature intended only one"). As the present case exemplifies, however, there are situations where the traditional rationales underlying the writ of habeas corpus simply do not favor full retroactivity. Therefore, we adopt the rule and reasoning of the plurality opinion in *Luurtsema II* in deciding the issue presently before us. See *Luurtsema II*, supra, 751, 758–73.

We next consider whether *Salamon* should be applied retroactively to the present case. The petitioner argues that *Salamon* should be applied retroactively because "there is no differentiation between a conviction obtained as a result of a trial or by way of a plea" and because there is a risk that after *Salamon*, his conviction does not comport with the due process requirements for guilty pleas. We are not persuaded.

"Whatever might be the situation in an ideal world, the fact is that the guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned." *Blackledge* v. *Allison*, 431 U.S. 63, 71, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977); see also *Statewide Grievance Committee* v. *Whitney*, 227 Conn. 829, 842, 633 A.2d 296 (1993) ("plea discussions [are] not only an essential part of the [administration of criminal justice] but a highly desirable part for many reasons" [internal quotation marks omitted]). The defendant avoids extended pretrial incarceration and the anxieties and uncertainties of a trial. *Blackledge* v. *Allison*, supra, 71. He further gains the certainty of a known and reduced penalty, a speedy disposition of his case, the chance to acknowledge his guilt, and a prompt start in realizing whatever potential there may be for rehabilitation. Id.; *State* v. *Sebben*, 145 Conn. App. 528, 545, 77 A.3d 811, cert. denied, 310 Conn. 958, 82 A.3d 627 (2013), cert. denied,       U.S.     , 134 S. Ct. 1950, 188 L. Ed. 2d 962 (2014). The state in turn obtains a prompt and largely final disposition of criminal charges with the certainty of a conviction. *Statewide Grievance Committee* v. *Whitney*, 842; *State* v. *Sebben*, supra, 545. "Judges and prosecutors conserve vital and scarce resources. The public is protected from the risks posed by those charged with criminal offenses who are at large on bail while awaiting completion of criminal proceedings." *Blackledge* v. *Allison*, supra, 71.

"These advantages can be secured, however, only if dispositions by guilty plea are accorded a great measure of finality. To allow indiscriminate hearings in . . . postconviction proceedings . . . would eliminate the chief virtues of the plea system—speed, economy, and finality. And there is reason for concern about that

prospect. More often than not a prisoner has everything to gain and nothing to lose from filing a collateral attack upon his guilty plea. If he succeeds in vacating the judgment of conviction, retrial may be difficult. If he convinces a court that his plea was induced by an advantageous plea agreement that was violated, he may obtain the benefit of its terms. A collateral attack may also be inspired by a mere desire to be freed temporarily from the confines of the prison. . . .

"Yet arrayed against the interest in finality is the very purpose of the writ of habeas corpus—to safeguard a person's freedom from detention in violation of constitutional guarantees. . . . The writ of habeas corpus has played a great role in the history of human freedom. It has been the judicial method of lifting undue restraints upon personal liberty. . . . And a prisoner in custody after pleading guilty, no less than one tried and convicted by a jury, is entitled to avail himself of the writ in challenging the constitutionality of his custody." (Citations omitted; emphasis omitted; internal quotation marks omitted.) Id., 71–72.

To balance these competing interests of finality and personal freedom from detention in violation of constitutional guarantees, our courts have required a petitioner to "demonstrate a miscarriage of justice or other prejudice and not merely an error which might entitle him to relief on appeal" in order to mount a successful collateral attack on his conviction. (Internal quotation marks omitted.) *Peruccio* v. *Commissioner of Correction*, 107 Conn. App. 66, 71, 943 A.2d 1148, cert. denied, 287 Conn. 920, 951 A.2d 569 (2008) (quoting *Summerville* v. *Warden*, 229 Conn. 397, 419, 641 A.2d 1356 [1994]). "In order to demonstrate such a fundamental unfairness or miscarriage of justice, the petitioner should be required to show that he is burdened by an unreliable conviction." (Internal quotation marks omitted.) *Peruccio* v. *Commissioner of Correction*, supra, 71. These principles apply with equal force to the question of whether *Salamon* should be applied retroactively in the present case. See *Luurtsema II*, supra, 299 Conn. 757 ("[i]n evaluating the rationales that other jurisdictions have proffered for and against giving full retroactive effect to new interpretations of criminal statutes, we deem it axiomatic that the policies governing the availability of habeas relief should reflect the purposes for which the remedy was established"); id. 760 (declining to adopt per se rule of retroactivity "because a review of the diverse contexts in which such challenges have arisen persuades us that there are various situations in which to deny retroactive relief may be neither arbitrary nor unjust"); id., 764 ("[i]n situations where the criminal justice system has relied on a prior interpretation of the law so that providing retroactive relief would give the petitioner an undeserved windfall, the traditional rationales underlying the writ of habeas corpus may not favor full retroac-

tivity").

With these legal principles in mind, we conclude that the traditional rationales underlying the writ of habeas corpus do not favor applying *Salamon* retroactively in the present case. First, there is no risk that the petitioner stands convicted of an act that the law does not make criminal. See *Schriro* v. *Summerlin*, supra, 542 U.S. 352. The criminal conduct the petitioner admitted to engaging in at his plea hearing was extremely serious. See footnotes 5 and 6 of this opinion. The petitioner along with three other individuals abducted Brown at gunpoint from his place of employment in Bridgeport, drove with him to his house in Shelton, forced their way into his house, and stole a substantial amount of money, jewelry, and property from his safe. See footnote 6 of this opinion. The entire nighttime incident lasted from approximately 8:45 p.m. until approximately 10:34 p.m. See footnote 5 of this opinion. The law clearly criminalizes this type of conduct under several statutes, including § 53a-92 (a) (2) (B). This is true even after *Salamon*.

"Although our holding in *Salamon* constituted a significant change with respect to our interpretation of the kidnapping statutes, we emphasized that [o]ur holding does not represent a complete refutation of the principles established by our prior kidnapping jurisprudence. . . . When [the] confinement or movement is merely incidental to the commission of another crime . . . [it] must have exceeded that which was necessary to commit the other crime. [T]he guiding principle is whether the [confinement or movement] was so much the part of another substantive crime that the substantive crime could not have been committed without such acts . . . . [T]he test . . . to determine whether [the] confinements or movements involved [were] such that kidnapping may also be charged and prosecuted when an offense separate from kidnapping has occurred asks whether the confinement, movement, or detention was merely incidental to the accompanying felony or whether it was significant enough, in and of itself, to warrant independent prosecution." (Internal quotation marks omitted.) *State* v. *O'Brien-Veader*, 318 Conn. 514, 557–58, 122 A.3d 555 (2015).

On the basis of the facts admitted by the petitioner at the plea hearing, it cannot plausibly be argued that the movement and confinement of Brown was merely incidental to the commission of the burglary and robbery. Instead, the movement and confinement of Brown was significant enough to warrant independent prosecution under § 53a-92 (a) (2) (B). That is, although the movement and confinement of Brown during the drive from his place of work in Bridgeport to his house in Shelton might have facilitated the robbery and burglary, the degree to which the petitioner and his companions confined and moved Brown was not *necessary* to com-

mit the robbery and burglary, nor was it *inherent* to those offenses. The court in *Salamon* made clear that when "the victim is moved or confined in a way that has independent criminal significance, that is, the victim was restrained to an extent exceeding that which was necessary to accomplish or complete the other crime"; *State* v. *Salamon*, supra, 287 Conn. 547; a defendant may still be convicted of kidnapping in conjunction with another substantive crime. Id., 547 n.33; see, e.g., *State* v. *Ward*, 306 Conn. 718, 736–39, 51 A.3d 970 (2012) (sufficient evidence of kidnapping when defendant dragged victim at knife-point from kitchen to bedroom where he moved her from bed to floor for sexual assault because that act made victim's "possibility of escape even more remote" and sexual assault was brief part of entire fifteen minute encounter); *State* v. *Hampton*, 293 Conn. 435, 463–64, 988 A.2d 167 (2009) (absence of *Salamon* instruction harmless because defendant drove victim around for approximately three hours before ordering her out of car, sexually assaulting her, and shooting her); *State* v. *Nelson*, 118 Conn. App. 831, 834–35, 861–62, 986 A.2d 311 (absence of *Salamon* instruction harmless because defendant repeatedly had assaulted victim in his apartment, demanding to know location of his money and threatening to kill him, and, afterward, restrained him for several hours while transporting him to several locations), cert. denied, 295 Conn. 911, 989 A.2d 1074 (2010).

Second, there is no risk that the petitioner faces a punishment that the law cannot impose upon him. See *Schriro* v. *Summerlin*, supra, 542 U.S. 352. Kidnapping in the first degree is a class A felony, for which a court may impose a term of imprisonment of "not less than ten years nor more than twenty-five years . . . ." General Statutes (Rev. to 2003) § 53a-35a (3); see also General Statutes § 53a-92 (b). *Salamon* had no impact on this sentencing scheme. As a result, the law clearly authorizes the petitioner's sentence of fifteen years and eight months imprisonment.

Third, and finally, we are mindful that the petitioner pleaded guilty pursuant to a negotiated plea agreement. Specifically, the petitioner agreed to plead guilty to kidnapping in the first degree and to being a felon in possession of a firearm in exchange for the certainty of concurrent sentences of fifteen years and eight months of imprisonment in the state and federal cases, and the entry of a nolle prosequi on the remaining state charges. The petitioner has received precisely what he bargained for under the terms of that agreement. If *Salamon* is applied retroactively in the present case and the petitioner's conviction is vacated, however, the state will have lost the benefit of its bargain. We recognize that in many cases the state and society's interest in "finality must give way to the demands of liberty and a proper respect for the intent of the legislative branch." *Luurtsema II*, supra, 299 Conn. 766. Nevertheless, we

cannot ignore the fact that, unlike in *Luurtsema II*, the state in the present case can plausibly be said to have relied to its detriment on our Supreme Court's prior interpretation of our kidnapping statutes when constructing the terms of the plea agreement. To authorize a term of fifteen years and eight months imprisonment, the petitioner could have pleaded guilty to kidnapping in the first degree, burglary in the first degree, robbery in the first degree, or another appropriate felony offense, e.g., conspiracy to commit one of the aforementioned felonies.[12] Had the state been prescient enough to foresee *Salamon* and thus selected a nonkidnapping offense as the basis for the guilty plea, *Salamon* would be irrelevant and the state would not be faced with the prospect of reconstructing and reprosecuting a fourteen year old case.

In light of these facts and circumstances, we fail to see how not applying *Salamon* retroactively in the present case would be fundamentally unfair or manifestly unjust. "Plea bargains always entail risks for the parties—risks relating to what evidence would or would not have been admitted at trial, risks relating to how the jury would have assessed the evidence and risks relating to future developments in the law. The salient point is that a plea agreement allocates risk between the two parties as they see fit. If courts disturb the parties' allocation of risk in an agreement, they threaten to damage the parties' ability to ascertain their legal rights when they sit down at the bargaining table and, more problematically for criminal defendants, they threaten to reduce the likelihood that prosecutors will bargain away counts (as the prosecutors did here) with the knowledge that the agreement will be immune from challenge on appeal." *United States* v. *Bradley*, 400 F.3d 459, 464 (6th Cir.), cert. denied, 546 U.S. 862, 126 S. Ct. 145, 163 L. Ed. 2d 144 (2005); accord *United States* v. *Lockett*, 406 F.3d 207, 213 (3d Cir. 2005); see also *Young* v. *United States*, 124 F.3d 794, 798 (7th Cir. 1997) ("If the law allowed the defendant to get off scot free in the event the argument later is shown to be a winner, then the defendant could not get the reduction in the first place. Every plea would become a conditional plea, with the (unstated) condition that the defendant obtains the benefit of favorable legal developments, while the prosecutor is stuck with the original bargain no matter what happens later. That approach destroys the bargain, and the prospect of such an outcome will increase the original sentence." [Emphasis omitted.]), cert. denied, 524 U.S. 928, 118 S. Ct. 2324, 141 L. Ed. 2d 698 (1998).

In sum, we are not persuaded that the traditional rationales underlying the writ of habeas corpus favor full retroactive application of *Salamon* in the present case. There is no risk that the petitioner stands convicted of an act that the law does not make criminal or faces a punishment that the law cannot impose upon him. The state has also relied sufficiently to its detri-

ment on our Supreme Court's prior interpretation of our kidnapping statutes when constructing the terms of the plea agreement such that applying *Salamon* retroactively in the present case would be inappropriate. Accordingly, the petitioner's due process claim, which is predicated on the retroactive application of *Salamon*, necessarily fails.

III

The petitioner's final claim is that because his guilty plea is invalid and his conviction must be vacated, he is once again entitled to a presumption of innocence and, therefore, he is actually innocent of kidnapping in the first degree. We decline to review the petitioner's claim.

"It is well settled that this court is not bound to consider any claimed error unless it appears on the record that the question was distinctly raised at trial and was ruled upon and decided by the court adversely to the appellant's claim. . . . It is equally well settled that a party cannot submit a case to the trial court on one theory and then seek a reversal in the reviewing court on another. . . . To review such a newly articulated claim, would amount to an ambuscade of the [habeas] judge." (Citation omitted; internal quotation marks omitted.) *Peeler* v. *Commissioner of Correction*, 170 Conn. App. 654, 677, 155 A.3d 772, cert. denied, 325 Conn. 901, 157 A.3d 1146 (2017).

In his second habeas petition and before the habeas court, the petitioner claimed that he was actually innocent of kidnapping in the first degree only because he "did not intend to prevent the victim's liberation for a longer period of time or to a greater degree than that which was necessary to commit a separate crime." In his petition for certification to appeal, the petitioner raised only a generic claim that the habeas court "erred by failing to find that [he] was actually innocent of the crime of kidnapping." Because the petitioner's claim on appeal was never distinctly raised before the habeas court, it could not have been ruled on by the habeas court in a manner adverse to the petitioner. Accordingly, we decline to review this claim for the first time on appeal.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 53a-92 provides in relevant part: "(a) A person is guilty of kidnapping in the first degree when he abducts another person and . . . (2) he restrains the person abducted with intent to . . . (B) accomplish or advance the commission of a felony . . . ."

[2] In the appendix to his brief, the petitioner provided the docket sheet for his criminal case, which states that he was initially charged with burglary in the first degree, robbery in the first degree, larceny in the first degree in violation of General Statutes § 53a-122, and kidnapping in the first degree with a firearm in violation of General Statutes § 53a-92a.

The docketing sheet was not admitted into evidence at the second habeas trial. On the basis of the allegations in the criminal case, however, it appears that the petitioner could have been charged with larceny in the first degree.

See General Statutes (Rev. to 2003) § 53a-122 (a) ("[a] person is guilty of larceny in the first degree when he commits larceny, as defined in section 53a-119, and . . . [2] the value of the property . . . exceeds ten thousand dollars").

The petitioner's trial counsel also testified at the first habeas trial that the petitioner was initially charged with kidnapping in the first degree with a firearm, and a transcript of the first habeas trial was admitted into evidence at the second habeas trial. The first habeas court further found that "[t]he evidence clearly reveals that the petitioner was present, with a firearm, in Brown's home when the robbery took place." *Little I*, supra, 2008 WL 4415754, *3.

[3] The petitioner pleaded guilty in federal court to being a felon in possession of a firearm, but the record does not reflect whether any additional federal charges were pending against the petitioner before he pleaded guilty or what the petitioner's sentencing exposure was under the United States Sentencing Guidelines.

[4] Evidence was presented at the first and second habeas trials that the petitioner was further exposed to enhanced penalties as a persistent felony offender. See General Statutes (Rev. to 2003) § 53a-40 (f) and (m). Specifically, the petitioner testified at the first habeas trial that he previously pleaded guilty to: (1) sale of narcotics and possession of marijuana in May, 1999; (2) possession of narcotics, two counts of assault in the third degree, and interfering with a police officer in May, 1999; and (3) assault in the second degree in October, 1994. The petitioner also admitted that he previously was convicted of attempted robbery in the first degree after a jury trial.

The petitioner's trial counsel similarly testified at the first habeas trial that the prosecutor in the petitioner's state case "very frequently uses the enhanced penalties of the persistent offender statutes" and that the petitioner "[a]bsolutely . . . would have been subject to that statute's terms." Trial counsel further testified that he believed that the facts of the case would have supported additional substantive criminal charges, including conspiracy. Trial counsel confirmed that when he and the petitioner's federal public defender met with the petitioner, they explained to him not only his sentencing exposure for the pending charge, but also the prospective additional charges and penalties.

[5] The information, as read by the court clerk to the petitioner before he pleaded guilty, made the following relevant allegations: "[The state] accuses Jermaine F. Little of kidnapping in the first degree. Charges that at the cities of Bridgeport and Shelton, on or about the ninth day of September, 2003, commencing at approximately 8:45 p.m. and continuing until approximately 10:34 p.m. at locations known, including 1844 Barnum Avenue, Bridgeport, and 27 Rock Rest Road, Shelton, and locations unknown, the said, Jermaine F. Little did abduct another person and he restrained the person with intent to accomplish or advance the commission of a felony . . . ."

[6] The prosecutor recited the following facts in support of the petitioner's guilty plea: "On September 9 at about 9 o'clock in the evening, when the victim was closing his store, he was abducted by [the petitioner]. The victim was taken in a car with other parties involved, who are [Harrison], [Freelove], [and Peoples, and] taken to his home in Shelton where they forced entry to his home. When in the home they had him open a safe. At least one or more of them had a gun and they stole a substantial amount of money, jewelry, property from the victim's safe. The police did an excellent job, including tracing cell phone calls where the victim's cell phone was used to call the [petitioner's] relatives, or it may have even been the house that the [petitioner] was living in. It was a very strong case."

[7] The habeas court granted the second habeas petition only as it pertained to one of the petitioner's claims of ineffective assistance of habeas counsel. *Little II*, supra, 2016 WL 2935514, *3. In particular, the petitioner claimed that his first habeas counsel rendered ineffective assistance when he failed to file a timely application for a fee waiver and appointment of counsel for his appeal from the judgment of the first habeas court denying his first habeas petition and his petition for certification to appeal. The habeas court agreed that the petitioner's first habeas counsel rendered ineffective assistance in this respect. The habeas court cautioned, however: "I make no judgment or prediction as to his ability to succeed; indeed, the petition for certification to appeal was denied. . . . All I'm doing by this action is allowing [the petitioner] to file the application for waiver of fees." Id.

The petitioner's appellate counsel in the present appeal was subsequently appointed to represent him in his appeal from the judgment of the first habeas court. On April 29, 2016, the petitioner's appellate counsel filed an

*Anders* brief and a motion for permission to withdraw as counsel, representing that "[u]pon thorough review and examination of the transcripts, information and record in this matter, the undersigned has determined that an appeal in this matter would be frivolous." See *Anders* v. *California*, 386 U.S. 738, 744–45, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967); see, e.g., *Lorthe* v. *Commissioner of Correction*, 103 Conn. App. 662, 674, 931 A.2d 348 (discussing filing of briefs by appointed counsel, pursuant to *Anders*, to inform court that habeas petition or appeal is "wholly frivolous"), cert. denied, 284 Conn. 939, 937 A.2d 696 (2007); see also Practice Book § 23-41 (governing motions to withdraw by appointed counsel in habeas cases). On September 22, 2017, the court, *Westbrook, J.*, granted the motion.

[8] In *Robles* v. *Commissioner of Correction*, 169 Conn. App. 751, 752–53, 153 A.3d 29 (2016), cert. denied, 325 Conn. 901, 157 A.3d 1146 (2017), the petitioner claimed that his guilty pleas to, inter alia, kidnapping in the first degree and attempt to commit kidnapping in the first degree, made pursuant to the doctrine of *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), were not made knowingly, intelligently, and voluntarily in light of our Supreme Court's subsequent holding in *Salamon*. This court declined to review the defendant's claim because he failed to raise it before the habeas court. Id., 753.

[9] Following appellate briefing and oral argument before this court, we sua sponte ordered the parties to file simultaneous supplemental briefs addressing the issue of retroactivity.

[10] Our Supreme Court did not foreclose the possibility that a defendant could mount a successful *constitutional* challenge to his conviction on those grounds. Luurtsema challenged his conviction only on the ground that there was insufficient evidence to support his conviction, not on the ground that the kidnapping statute was unconstitutionally vague as applied to the facts of his case. *Luurtsema I*, supra, 262 Conn. 203–204. As a result, the court stated that it could "neither acknowledge nor reject the merits of such a constitutional claim." Id., 204.

[11] In *State* v. *Sanseverino*, 287 Conn. 608, 949 A.2d 1156 (2008), overruled in part by *State* v. *DeJesus*, 288 Conn. 418, 437, 953 A.2d 45 (2008), superseded in part after reconsideration by *State* v. *Sanseverino*, 291 Conn. 574, 969 A.2d 710 (2009), overruled in part by *State* v. *Payne*, 303 Conn. 538, 548, 34 A.3d 370 (2012), a companion case released on the same day as *Salamon*, our Supreme Court took up a second challenge by a defendant convicted after a jury trial of kidnapping in the first degree for conduct incidental to a series of sexual assaults. Our Supreme Court declined to address the defendant's constitutional claim, applied *Salamon* retroactively; id., 618–20, 624–26; and concluded that the defendant was entitled to a new trial on the basis of the court's failure to instruct the jury in accordance with *Salamon*. *State* v. *Sanseverino*, 291 Conn. 574, 589–90, 969 A.2d 710 (2009). Because the direct appeal in *Sanseverino* was still pending when *Salamon* was decided, however, there was no question that *Salamon* should be applied retroactively in that case. See *State* v. *Sanseverino*, supra, 287 Conn. 620 n.11 ("a rule enunciated in a case presumptively applies retroactively to pending cases").

[12] Burglary in the first degree and robbery in the first degree are class B felonies, for which a court may generally impose a term of imprisonment of "not less than one year nor more than twenty years . . . ." General Statutes (Rev. to 2003) § 53a-35a (5); see also General Statutes §§ 53a-101 (c) and 53a-134 (b). If the petitioner were convicted under subsection (a) (1) of the burglary statute or subsection (a) (2) of the robbery statute, however, the court cannot impose a term of imprisonment of less than five years. General Statutes (Rev. to 2003) § 53a-35a (5). Conspiracy is a crime of "the same grade and degree as the most serious offense which . . . is an object of the conspiracy, except that . . . [a] conspiracy to commit a class A felony is a class B felony." General Statutes § 53a-51.